**Anthony TODORA, Appellant**

v.

**Todd BUSKIRK, Connie Sutton–Falk, John Stoffa, and The County of Northampton.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2014.

Decided July 7, 2014.

Reargument Denied Aug. 28, 2014.

Brian M. Monahan, Easton, for appellant.

Gerard J. Geiger, Stroudsburg, for appellees.

BEFORE: BERNARD L. McGINLEY, Judge, and RENÉE COHN JUBELIRER, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Appellant Anthony Todora (Plaintiff) appeals from the September 20, 2013 order of the Court of Common Pleas of Northampton County (trial court) granting the motion for summary judgment filed by Todd Buskirk, Connie Sutton–Falk, John R. Conklin,[1] John Stoffa, and the County of Northampton (collectively, Defendants). We affirm.

Plaintiff was employed by the Northampton County Prison as a corrections officer from 1989 to 2008.[2] On November 18, 2005, Plaintiff and other corrections officers filed a complaint with the trial court alleging that they were exposed to toxic mold during their employment at the prison[3] (the "mold lawsuit").[4] On March 1, 2010, the trial court dismissed the mold lawsuit following the grant of summary judgment in favor of the defendants.

On November 24, 2008, Plaintiff and Vincent Ferraro filed a complaint against the above-named defendants in the United States District Court for the Eastern District of Pennsylvania, asserting causes of action based primarily upon a First Amendment retaliation claim. Plaintiff alleged that, after filing the mold lawsuit, he was unfairly disciplined in retaliation for exercising his First Amendment rights. The district court transferred the matter to the trial court by order dated September 22, 2009.[5]

Defendants filed a motion for summary judgment on Plaintiff's retaliation claims on March 26, 2013.[6] Plaintiff filed a re-

---

1. Plaintiff's claims against defendant John Conklin were dismissed with prejudice via praecipe filed April 2, 2013.

2. The material facts and procedural history are summarized from the Statement of Reasons provided by the trial court in support of its order.

3. The complaint named the County of Northampton, County Executive Glenn Reibman, former Director of Corrections James Smith, Director of Corrections and former prison warden Todd Buskirk, prison warden Scott Hoke, and Aramark Correctional Services, Inc., provider of prison food services, as defendants. (Reproduced Record (R.R.) at 603a.)

4. The mold lawsuit was heard by the same trial judge, the Honorable F.P. Kimberly McFadden, whose order granting summary judgment is challenged in this appeal.

5. Plaintiff Ferraro discontinued his claims on January 23, 2013.

6. In relevant part, Pa.R.C.P. No. 1035.2 provides that any party may move for summary judgment as a matter of law:

 (2) if, after the completion of discovery relevant to the motion, including the produc-

sponse, to which Defendants filed a reply. The trial court granted the motion for summary judgment, and Plaintiff now appeals to this Court.

Our scope of review of the trial court's order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Greenleaf v. Southeastern Pennsylvania Transportation Authority,* 698 A.2d 170 (Pa.Cmwlth.1997). Summary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has established entitlement to judgment as a matter of law. *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251 (1988). "In order to withstand a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to her case and on which she bears the burden of proof such that a jury could return a verdict in her favor." *Wenger v. West Pennsboro Township,* 868 A.2d 638, 641 (Pa.Cmwlth.2005). We must view the record in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). Summary judgment is properly granted only in those cases which are free and clear from doubt. *Wenger.*

Plaintiff argues that the trial court failed to view the record in the light most favorable to the non-moving party. Specifically, Plaintiff asserts that the trial court erred in: determining that the mold lawsuit did not involve a matter of public concern; concluding that Plaintiff failed to establish a causal connection between his constitu-

tionally protected speech and disciplinary actions taken in retaliation; dismissing his due process claims; and dismissing his derivative claims based on the incorrect determination that there was no underlying constitutional violation. We disagree.

 Plaintiff's retaliation claim asserts that he was unfairly disciplined for filing the mold lawsuit in violation of his First Amendment rights. In order to prevail, Plaintiff must show: (1) that the activity at issue was in fact protected; and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir.2005). Defendants may defeat Plaintiff's claim by demonstrating that the same adverse action would have taken place in the absence of the allegedly protected conduct. *Id.*

 When a public employee claims that his employer retaliated for First Amendment activity, the employee must establish that the speech related to a matter of public concern. *Eichenlaub v. Township of Indiana,* 385 F.3d 274, 282 (3d Cir.2004). Whether a matter is of public concern is determined by the content, form, and context of a statement. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The issue is one of law, not fact, for the court to decide. *Stroman v. Colleton County School District,* 981 F.2d 152, 156 (4th Cir.1992).

 Speech that addresses political, social, or community concerns is a matter of public concern. *Smith v. Central Dauphin School Dist.,* 419 F.Supp.2d 639, 646 (M.D.Pa.2005). When determining whether speech is of public concern, the speaker's motive is important, but not disposi-

tion of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

tive. *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir.1997). An employee's complaints about safety matters and working conditions are not considered matters of public concern where the complaints were not made to protect the interests of others but only to protect the interest of the complaining employee himself. *Sanguigni v. Pittsburgh Board of Public Education*, 968 F.2d 393, 399 (3d Cir.1992).

In *Sanguigni*, a teacher wrote a paragraph in the faculty newsletter that made references to teachers being put under stress, having bad luck, and leaving the building with low esteem. Subsequently, she maintained that her lowered performance appraisals and removal from her coaching positions were in retaliation for her criticisms in the newsletter. The teacher filed suit against school officials in their individual and official capacities, the board of education, and its personnel director in her individual and official capacities, alleging that the negative performance appraisals constituted violations of her First Amendments freedom of speech and association rights and the loss of her coaching position violated her right to due process. The district court dismissed her complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. On appeal, the Third Circuit Court of Appeals affirmed the decision, concluding, *inter alia*, that the teacher's statements in the newsletter focused solely on employee morale and were not statements of public concern for which public employees receive protection under the First Amendment.

The court in *Sanguigni* discussed different categories of cases holding that speech related to broad social or policy issues is of public concern. *See e.g., Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) and *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988) (involving complaints about racial discrimination). Other decisions in which statements were found to be a public concern involved speech that related primarily to the way in which a government office was serving the public. *See e.g., Czurlanis v. Albanese*, 721 F.2d 98 (3d Cir.1983) (county employee criticized county and state governments for practices that he considered inefficient, wasteful, and possibly fraudulent.)

Courts have reached the opposite conclusion regarding speech that is related solely to mundane employment grievances. For example, in *Gaj v. United States Postal Service*, 800 F.2d 64, 67 (3d Cir.1986), the court held that an employee's complaints about safety matters and working conditions did not relate to matters of public concern because the complaints were not made to protect the interests of other employees but only to protect the interests of the complaining employee himself. Gaj was an employee of the Postal Service and was active in union affairs as a health and safety officer. Gaj complained to the Postal Service about safety matters and working conditions, including the noise level, and the fact that a conveyor belt was permitted to operate while employees performed maintenance on it. Gaj, a disabled veteran, also filed a lawsuit against the Postal Service alleging handicap discrimination. The lawsuit was dismissed. Eventually, Gaj quit his employment because of the safety deficiencies.

When the Postal Service refused to rehire him, Gaj filed suit alleging, inter alia, that the defendants violated his First Amendment rights by denying him employment because of his safety complaints. The district court dismissed his First Amendment claim on the ground that safety complaints do not constitute "speech regarding public issues" and therefore are not protected by the First Amendment. The Third Circuit affirmed that ruling,

noting that Gaj's complaints concerned the noise level and conveyor belt maintenance and reasoning that, while in some instances such complaints might comprise criticisms of the safety policies of the Postal Service and therefore rise to the level of public concern, Gaj was merely expressing himself as an employee dissatisfied with his own conditions of employment.

The court in *Gaj* explained that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Id.*

■ In this case, in analyzing Plaintiff's retaliation claim, the trial court first noted that, rather than implicating any public concern, the mold lawsuit complained about conditions of employment and was a personal injury action to recover money damages. Our review of Plaintiff's complaint confirms that conclusion. Rather than requesting injunctive relief to protect the safety of the public, the complaint alleges that the Pennsylvania Department of Labor and Industry issued a Mold Abatement Order in 2003 that required the County to remediate the mold problem at the prison. (R.R. at 618a.) The mold lawsuit was filed two years later, and it alleges that Defendants breached their duty of care, resulting in work conditions that caused or exacerbated Plaintiff's health problems. We agree with the trial court's conclusions that Plaintiff's mold lawsuit was not protected speech.

■ Moreover, although Plaintiff insists that his speech did involve a matter of public concern, we conclude that, even if Plaintiff's speech had been protected, his complaint does not set forth any material facts to demonstrate that his filing the mold lawsuit was a substantial factor leading to the alleged retaliatory action.

In his complaint, Plaintiff alleged that after he filed the mold lawsuit he was unfairly disciplined as a form of retaliation. However, the record reflects that Plaintiff had a history of infractions for which he was disciplined before the mold lawsuit was filed. For example, in September 1994, Plaintiff was suspended for 10 days for sexually harassing an inmate's wife. In January 1997, Plaintiff was suspended for 90 days for assaulting a contractor (this incident also resulted in a $15,000 settlement). In March 1998, Plaintiff received a written warning for verbal abuse directed at a law librarian. In May 1999 and August 2001, Plaintiff was given a verbal warning for going outside the chain of command. In December 2004 and November 2005, Plaintiff was given verbal and written warnings for excessive absenteeism.

The record further reflects that this pattern continued after Plaintiff filed the mold lawsuit on November 18, 2005. In December 2005, he was given a written warning for excessive absenteeism; in January 2007, he was given a verbal warning for threats directed at a kitchen supervisor; in February 2007, Plaintiff was suspended for 20 days for sexual harassment for making lewd and obscene remarks to other correctional officers; in January 2008, Plaintiff received counseling after yelling at a kitchen supervisor; in April 2008, Plaintiff was suspended for three days for obstructing an investigation; in October 2008, Plaintiff was cited for offensive language; and also

in October 2008, Plaintiff was cited for sexual harassment of a coworker.

Plaintiff argues that some of the actions for which he was disciplined prior to filing the mold lawsuit were misconstrued. Plaintiff also asserts that there is a temporal proximity between his filing the mold lawsuit and an increase in disciplinary actions demonstrating a causal relationship between those events. However, the record evidences support for each disciplinary action. Additionally, the trial court found that after more than four years of discovery, Plaintiff did not produce any evidence to show that the disciplinary actions were retaliatory in nature. Although Plaintiff argues that there was a dramatic increase in disciplinary actions after he filed the mold lawsuit, Plaintiff has not pointed to any evidence demonstrating a causal relationship between his filing the mold lawsuit and an increase in disciplinary action. Accordingly, the trial court properly determined that Plaintiff has not asserted a valid First Amendment retaliation claim.

■■■■ Plaintiff also argues that the trial court erred in dismissing his due process claims where he was indefinitely suspended without notice and an opportunity to respond. To state a claim under 42 U.S.C. § 1983 for a deprivation of procedural due process rights, a plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures available to him did not provide due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir.2006).

The trial court first concluded that Plaintiff's due process claims were unsupported by any alleged facts, stating that, while "Plaintiff appears to argue that he was suspended from work without a hearing . . . no such claim appears in the Com-

plaint." (Trial court op. ¶ 18.) In addition, the trial court correctly noted that, to the extent that Plaintiff asserts that he was suspended without pay prior to a disciplinary hearing, a temporary suspension without pay generally does not require a pre-deprivation hearing. *Espinosa v. County of Union*, 212 Fed.Appx. 146, 155 (3d Cir.2007) (citing *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). We conclude that the trial court properly granted summary judgment on Plaintiff's due process claim.

Finally, Plaintiff argues that the trial court abused its discretion by dismissing Plaintiff's derivative claims of municipal liability, supervisory liability, and civil conspiracy, based upon its erroneous ruling that there had been no underlying constitutional violation to support those claims. Because we agree with the trial court's conclusion that Plaintiff "failed to produce evidence of facts essential to [his] cause of action," Pa.R.C.P. No. 1035.2, we reject Plaintiff's final argument.

Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of July, 2014, the order of the Court of Common Pleas of Northampton County, dated September 20, 2013, is affirmed.