# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Patricia Schellbach,      :
       :
       Appellant     :
       :
       v.       : No. 1732 C.D. 2016
       : Argued: September 11, 2017
Colonial Intermediate Unit #20     :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK             FILED: October 12, 2017


Dr. Patricia Schellbach (Appellant) appeals from the September 19, 2016 order of the Court of Common Pleas of Northampton County (trial court), granting summary judgment[1] to Colonial Intermediate Unit #20 (CIU#20) and dismissing Appellant's complaint, in which she alleges that she was discharged in violation of the Whistleblower Law, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428. We affirm.

---

[1] In relevant part, Pa.R.C.P. No. 1035.2 provides that after the relevant pleadings are closed, "any party may move for summary judgment as a matter of law . . . (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Appellant became employed as a school psychologist with CIU#20 in October 2013. Affidavit of Dr. Patricia Schellbach, Reproduced Record (R.R.) at 141a. CIU#20 assigned her to East Stroudsburg Area School District (District), where she worked at the High School North and Lehman Intermediate Unit. *Id.* Appellant's duties included conducting initial evaluations and re-evaluations of students' eligibility for special education services and complying with due dates for those reports, in accord with the District's obligations under the Individuals with Disabilities Education Act (IDEA).[2] Appellant previously worked as a school psychologist from 2006 to 2011 in North Carolina, where she performed the same job duties. R.R. at 141a.

Appellant resigned from her position on May 15, 2014. On January 7, 2015, Appellant filed an amended complaint alleging that she was constructively discharged from her position as a school psychologist in violation of the Whistleblower Law after she expressed concerns about CIU#20's lack of compliance with federal and state laws regarding the evaluation of students for special education services. Specifically, Appellant claimed that she questioned CIU#20 on numerous occasions concerning its compliance with "certain IDEA federal laws" rather than following "the types of IDEA and [Individualized Education Programs (IEP)] procedures and protocols that she had been taught in her prior position" in North Carolina. Amended Complaint, ¶¶ 25-26. Appellant also alleged that she informed CIU#20 and District supervisors that (1) neither the IDEA nor other laws or regulations required a mental health diagnosis in order to identify a student as having an emotional disturbance, and (2) federal law required a

___
[2] 20 U.S.C. §§1400-1482.

2

collaborative approach to identify students as eligible for special education services. *Id.*, ¶¶ 82-83.

CIU#20 filed preliminary objections, asserting that the amended complaint failed to identify a statute or regulation that was violated and characterizing the allegations as Appellant's mere disagreement with the differing evaluation methodologies utilized by CIU#20. The trial court denied the preliminary objections, and the parties proceeded to discovery.

In her April 5, 2016 deposition, Jacquelyn Bartek, CIU#20's supervisor of pupil personnel services, testified that Appellant initially was allowed to work for five weeks without deadlines. In accord with its routine practice, CIU#20 also assigned her a mentor, Marilyn Herwig. Early on, Appellant expressed concern about her caseload, and her supervisors expressed their concern about her failure to maintain compliance with statutory deadlines. In December 2013, Bartek concluded that Appellant was not meeting applicable deadlines and was having difficulty adapting to required testing methodologies. On January 3, 2014, Appellant was placed on a performance improvement plan that addressed the timeliness of her reports and her difficulty learning the testing methods used by the District. At a January 9, 2014 meeting, Appellant shared an article regarding special education practices, but the meeting focused on Appellant's need to get caught up with her caseload. With assistance, Appellant did get caught up by the end of January. R.R. at 7a-16a; Appellant's August 22, 2016 Affidavit (Response to Summary Judgment), R.R. at 148a-49a.

Each public school district in a state that accepts federal funds under the IDEA has a continuing obligation, called the "child find" requirement, to identify and evaluate all students reasonably believed to have a disability, and each state

3

receiving funds must establish procedures to effectuate this requirement. *Ridley School District v. M.R.,* 680 F.3d 260, 271 (3d Cir. 2012). Pennsylvania has set forth child find procedures in 22 Pa. Code §§14.121 - 14.125. Bartek and Herwig advised Appellant that Pennsylvania's child find regulations require the development, approval, and implementation of assessment plans for identifying students with specific learning disabilities (SLDs), and they explained to Appellant that her preferred method of assessing students, the "base rate" method, was contrary to the District's state-approved plan, which uses a discrepancy model. R.R. at 6a, 22a, 26a.

However, Appellant was dissatisfied with the District's process, particularly as it was used to evaluate a student identified herein as "J." In December 2013 or January 2014, Appellant emailed Lynda Hopkins, a director of pupil services for the District, and copied her supervisors, questioning the District's practice of requiring a student to have a mental health diagnosis in order to support a determination of emotional disturbance.[3] A determination of emotional disturbance

---

[3] As defined by the regulation at 34 CFR §300.8, emotional disturbance means:

> (i) . . . a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:
>
> > (A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.
> >
> > (B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.
> >
> > (C) Inappropriate types of behavior or feelings under normal circumstances.
> >
> > (D) A general pervasive mood of unhappiness or depression.
> >
> > (E) A tendency to develop physical symptoms or fears associated with personal or school problems.
>
> (ii) Emotional disturbance includes schizophrenia. The term does not apply to children who are socially maladjusted, unless it is determined that they have an emotional disturbance under paragraph (c)(4)(i) of this section.

identifies a student as eligible for services under the IDEA, and neither the IDEA nor state law requires a mental health diagnosis to support that determination. During a January 9, 2014 meeting with CIU#20 and District supervisors, Appellant distributed a disability fact sheet,[4] and she emphasized that no mental health diagnosis is mandated under the IDEA to establish a student's eligibility for special education based on emotional disturbance. Appellant also complained that the District paid for a psychiatric evaluation for "N.," a Caucasian student, but declined to pay for a similar evaluation for J., who is African American. Additionally, Appellant was concerned that her supervisors did not approve her determination of SLD in math for J., citing difficulties he was having after being placed in a new foster home and moving to a new school district. Appellant's August 22, 2016 Affidavit (Response to Summary Judgment), R.R. at 140a-79a.

Based on observations and consultations from February 1 through April 14, 2014, Appellant's supervisors noted additional problems, and she received an unsatisfactory rating for the period from October 21, 2013, to April 14, 2014. R.R. at 77a-85a. Appellant's untimely completion of reports resulted in the District's failure to meet state-mandated timelines and the need for the District to file additional reports, and caused teachers to be late in finalizing state-mandated IEP reports. In May 2014, after a third unsatisfactory rating, Appellant was directed to

34 CFR §300.8.

[4] National Dissemination Center for Children with Disabilities, Disability Fact Sheet #5. Supplemental Reproduced Record (SRR) 1b-7b. In relevant part, the fact sheet includes the definition of emotional disturbance at 34 CFR ¶300.8 and discusses the following as the most common emotional disturbances: anxiety disorders, bipolar disorder, conduct disorder, eating disorder, obsessive-compulsive disorder, and psychotic disorders. SRR at 3b-4b.

attend a *Loudermill*[5] hearing with CIU#20's director of human resources and a union representative. Essentially, she was given the option to resign or be terminated, and she resigned on May 15, 2014. R.R. at 33a.

In her amended complaint, Appellant alleges that CIU#20 engaged in an illegal process that excluded her input from the decision to rescind the SLD eligibility of J. She alleges that while a supervisor or local education agency may make a final determination of eligibility, their doing so is to be undertaken only when a decision cannot be made by the IDEA team. Appellant insists that if CIU#20 and the District had utilized proper criteria, there would have been sufficient data to consider J. for eligibility for special education services based on a determination of emotional disturbance.

In her November 25, 2015 deposition testimony, Appellant was asked to identify the laws or regulations that CIU#20 allegedly violated. She responded that CIU#20 insisted on a mental health diagnosis that is not required by IDEA regulations to support a determination of emotional disturbance. According to Appellant, she repeatedly questioned the criteria and methods utilized to support determinations of emotional disturbance and SLD, and she expressed concern that J was being deprived of support he needed to be successful. However, Appellant acknowledged that federal regulations do not preclude the consideration of a mental health diagnosis to support those determinations. R.R. at 38a-48a.

CIU#20 filed a motion for summary judgment on July 1, 2016, alleging that Appellant offered no evidence to support her claim that she was retaliated

---

[5] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) (due process rights of public employees are satisfied by providing them notice and opportunity to be heard prior to termination).

against for reporting a violation of law and had not identified a violation of law that was committed. The trial court agreed and granted the motion for summary judgment, concluding that CIU#20 was entitled to judgment as a matter of law.

On appeal to this Court, Appellant argues that the trial court erred in granting summary judgment and holding that Appellant failed to raise any issues of material fact.[6]

Initially, we note that a "whistleblower" is defined as a "person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." Section 2 of the Whistleblower Law, 43 P.S. §1422. "Wrongdoing" means a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation . . . ." *Id.*

To make out a prima facie case under the Whistleblower Law, a plaintiff must prove that prior to the alleged acts of retaliation, she had made a good faith report of wrongdoing to appropriate authorities, and the plaintiff must come forward with some evidence of a connection between the report of wrongdoing and

---

[6] Our scope of review of the trial court's order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Todora v. Buskirk*, 96 A.3d 414, 417 (Pa. Cmwlth. 2014). Summary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has established entitlement to judgment as a matter of law. *Id.* We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Todora*, 96 A.3d at 414. Summary judgment is properly granted only in those cases which are free and clear from doubt. *Id.* "In order to withstand a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to her case and on which she bears the burden of proof such that a jury could return a verdict in her favor." *Wenger v. West Pennsboro Township*, 868 A.2d 638, 641 (Pa. Cmwlth. 2005).

the alleged retaliatory acts. *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001). To establish a whistleblower claim, a report must specify how an employer is guilty of wrongdoing:

> The report must provide information that is sufficient to identify the law allegedly violated; reports of vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower Law. The test is objective; it is irrelevant whether an employee believes the employer's conduct constitutes wrongdoing; an actual violation is required. The law that the employer violated must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a 'wrongdoing.'

*Sukenik v. Township of Elizabeth*, 131 A.3d 550, 556 (Pa. Cmwlth. 2016) (citations omitted).

Appellant argues that she made the requisite good faith report by emailing Hopkins, passing out the special education fact sheet at the January 2014 meeting, and speaking about a case in which a mental health diagnosis was used to determine a student's eligibility for special education services. Essentially, she continues her arguments that CIU#20 violated the IDEA by requiring students to have a mental health diagnosis to qualify for special education under the IDEA and by failing to determine a student's eligibility for services during a collaborative meeting at which all members of the eligibility team were present.

In support of these assertions, Appellant rehashes the deposition testimony of Bartek and Herwig, portions of which reflect that the methodologies urged by Appellant to determine eligibility under the IDEA are not prohibited by the IDEA or regulations. To support her disagreement with the eligibility criteria used by the District, Appellant observes that under 34 CFR §300.307, state criteria *"must not require* the use of a severe discrepancy between intellectual ability and

achievement for determining whether a child has a specific learning disability. . . .*"* 34 CFR §300.307(a)(1) (emphasis added).  However, Appellant fails to note that the federal regulation also requires a public agency to use the criteria adopted by the state, and, more importantly, that the Pennsylvania regulation *permits*, *but does not require*, the use of a severe discrepancy.[7]

As to her argument regarding collaborative eligibility determinations, Appellant relies on references in the IDEA and regulations to an "IEP team" and to "a group of professionals" who are to review evaluation materials.  Without more, however, those phrases are insufficient to establish any legal requirement or prohibition that was violated by CIU#20.

---

[7] Section 14.125 of the Department of Education's regulations states:

> Each school district and intermediate unit shall develop procedures for the determination of specific learning disabilities that conform to criteria in this section. These procedures shall be included in the school district's and intermediate unit's special education plan in accordance with §14.104(b) (relating to special education plans). To determine that a child has a specific learning disability, the school district or intermediate unit *shall . . . [u]se one of the following procedures*:
>
> **(i)** A process based on the child's response to scientific, research-based intervention, which includes documentation that:
>
>> **(A)** The student received high quality instruction in the general education setting.
>>
>> **(B)** Research-based interventions were provided to the student.
>>
>> **(C)** Student progress was regularly monitored.
>
> **(ii)** A process that examines whether a child exhibits a pattern of strengths and weaknesses, relative to intellectual ability *as defined by a severe discrepancy between intellectual ability and achievement, or relative to age or grade*.

22 Pa. Code §14.125 (emphasis added).

9

Our careful review of the record confirms that Appellant has not identified any statutory provision or applicable regulation that specifically prohibits the complained-of conduct. Thus, the trial court properly concluded that Appellant has not alleged the "wrongdoing" necessary to state a claim under the Whistleblower Law. Section 2 of the Whistleblower Law, 43 P.S. §1422; *O'Rourke*, 778 A.2d at 1200; *Sukenik*, 131 A.3d at 556.

Accordingly, we affirm the trial court's order granting summary judgment to CIU#20 and dismissing Appellant's complaint.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Patricia Schellbach,      :
      :
         Appellant   :
      :
      v.      : No. 1732 C.D. 2016
      :
Colonial Intermediate Unit #20      :

## O R D E R

AND NOW, this 12th day of October, 2017, the order of the Court of Common Pleas of Northampton County, dated September 19, 2016, is affirmed.

_____
MICHAEL H. WOJCIK, Judge