IN THE COMMONWEALTH COURT OF PENNSYLVANIA

La-Qun Williams,                    :
                                    :
            Appellant               :
                                    :
        v.                          : No. 1250 C.D. 2018
                                    : Submitted: November 21, 2018
Tracy Shawley, et al.               :

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                    FILED: June 27, 2019


        La-Qun Williams (Inmate) appeals, *pro se*, the order of the Greene County Court of Common Pleas (trial court) granting the summary judgment motion of a number of defendants associated with the Pennsylvania Department of Corrections (Department) and the State Correctional Institute at Greene (SCI-Greene) (collectively, Commonwealth Defendants) and dismissing his complaint. We affirm.

        Inmate is a prisoner at SCI-Greene, serving a 35- to 85-year sentence imposed on May 16, 1997, based on his convictions for attempted homicide, rape, involuntary deviate sexual intercourse, indecent assault, and unlawful restraint. *See Commonwealth v. Williams* (Pa. Super., 596 HBG 1997, filed May 13, 1998), *appeal denied*, 732 A.2d 1210 (Pa. 1998). Although originally housed at SCI-Smithfield, his personal property was inventoried on a DC-153M form by the correctional officers at that institution in November 2013, for his relocation to SCI-Greene. Supplemental Reproduced Record (S.R.R.) at 30b. His property was

again inventoried on a DC-153M form by Officers (Off.) Blanchard and Sumey upon his arrival at SCI-Greene. *Id.* at 31b. Both forms indicated that Inmate's black footlocker was "in very poor condition." *Id.* at 30b-31b. Both forms also indicated that Inmate did not possess a typewriter and that his silver Guess wristwatch was not operational. *Id.* The form completed at SCI-Smithfield also noted that he had an "old goose neck" book light, but the form from SCI-Greene does not note his possession of this item. *Compare id.* at 30b, 31b.

On January 8, 2015, Inmate filed Grievance Number 546908, alleging that his wristwatch was scratched, his book light and footlocker were altered, and his typewriter was stolen in the move between the institutions. S.R.R. at 17b. As a result, Inmate sought reimbursement for his altered book light and footlocker; to be provided a replacement footlocker; the return of his typewriter or $270.00 for its replacement; and $20,000.00 in reimbursement "[f]or the deliberate altering of [his] personal property." *Id.* at 18b.[1]

On February 5, 2015, Inmate filed Grievance Number 550839, again alleging the damage to his footlocker, book light, and wristwatch and seeking

---

[1] Inmate attached a forged DC-153M inventory sheet to the grievance form with an invalid DC-153M inventory number, 702704, and Off. Sumey's forged signature. S.R.R. at 32b. *See also id.* at 20b ("Attached to this grievance was a fictitious DC-153M with a forged signature of [Off.] Sumey."); Policy Number DC-ADM 804, Section 1.A.17. ("An inmate filing a grievance related to a claim of missing property must provide documentation such as a DC-153A, Personal Property Inventory Sheet . . . for evidence or proof that the property items were once in his/her possession. Failure to do so may result in the rejection of the grievance."). Inmate wrote on the forged inventory sheet that he possessed a typewriter and that his footlocker was in "mint condition." S.R.R. at 32b. The grievance was initially rejected as untimely. *Id.* at 19b.

replacement and $30,000.00 in damages.  S.R.R. at 72b, 73b.  The grievance was denied as repetitive of his prior grievance.[2]  *Id.* at 74b, 75b.

On March 8, 2015, Lieutenant (Lt.) Williams denied the grievances, stating the following in pertinent part:

> I reviewed two (2) separate DC-153M's concerning your personal property.  I found them in your file/folder.  The first one was from SCI Smithfield, dated 11/20/2013; which was your exit inventory prior to transferring to SCI Greene[.]   The second one was your initial inventory from SCI Greene, dated 12/09/13; completed by [Off.] Blanchard and [Off.] Sumey.  I discovered some very important information, which will resolve these issues.  Both DC-153M's show that your black footlocker was in very poor condition.  Both inventories show that you never had a typewriter.  Both inventories also show that your watch was not operational.  I inspected your old gooseneck lamp/book light.  It is very old and seems to be in that condition from normal wear and tear.  Also, you signed both DC-153M's acknowledging that all property is/was present and accounted for, no property was missing and/or damaged, and your signature above acknowledges accuracy.  Attached to this grievance was a fictitious DC-153M with a forged signature of [Off.] Sumey.  Verified by [Off.] Sumey.  Based on the above, I find the following:  You attempted to receive payment for a typewriter that did not exist.  Your footlocker was described in very poor condition when you claimed that it was in mint condition.  Your watch was noted as not operational.  Your lamp showed signs of normal wear and tear.  This grievance is denied and frivolous.  Your request for relief is also denied.  Also, Misconduct #B751007 will be issued for Forgery, Destroying,

---

[2] *See* Policy Number DC-ADM 804, Section 1.A.15. ("Any grievance issue that has been or is currently being addressed will not be readdressed in a subsequent grievance.").

3

Altering, Tampering with, or Damaging property, and Lying to an employee.[3]

S.R.R. at 20b, 77b.

On March 10, 2015, following a hearing, Hearing Examiner Kerns-Barr dismissed Misconduct Number B751007 without prejudice. S.R.R. at 37b. However, on March 13, 2015, Lt. Williams filed Misconduct Number B558353, again charging Inmate with: (1) violating the Pennsylvania Crimes Code (Crimes Code)-Forgery[4]; (2) destroying, altering, tampering with, or damaging property;

---

[3] *See* Section 93.9(a) of the Department's regulations, which states in pertinent part:

> (a) The Department will maintain an inmate grievance system which will permit any inmate to seek review of problems which the inmate experiences during the course of confinement. . . . An inmate will not be disciplined for the good faith use of the grievance systems. However, an inmate who submits a grievance for review which is false, frivolous or malicious may be subject to appropriate disciplinary procedures. A frivolous grievance is one in which the allegations or the relief sought lacks any arguable basis in fact as set forth in DC-ADM 804—Inmate Grievance System, which is disseminated to inmates.

37 Pa. Code §93.9(a); DC-ADM 801, Section 1.A.1. ("Every inmate under the jurisdiction of the Department is expected to follow Department rules and regulations. . . . The Misconduct Charges (Attachment 1-A) provides a list of prohibited behavior that may result in the commencement of disciplinary procedures."); DC-ADM 801, Attachment 1-A(B)(42) (listing "Lying to an employee" as a "Class I Charge"). *See also* DC-ADM 804, Glossary of Terms (defining "Frivolous Grievance" as "[a] grievance is frivolous when it is found that the allegations or the relief sought lack any arguable basis in law, fact and/or policy.").

[4] Section 4101(a) of the Crimes Codes states:

> **(a) Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> (1) alters any writing of another without his authority;

**(Footnote continued on next page…)**

4

and (3) lying to an employee based on the grievances and the attached documents that he submitted seeking compensation. *Id.* at 40b-41b.

On March 23, 2015, a hearing was conducted before Hearing Examiner Kerns-Barr on the refiled Misconduct Number B558353. In the Disciplinary Hearing Report, the Hearing Examiner stated the following, in relevant part:

> [Inmate] pleads not guilty to [the charges].
> States he wants to know where the confiscation slip is for the altered property. States that he never said he arrived with these items. States that he never stated #702704. States that his original property and states that he never put that number on anything. [Hearing Examiner] notes that #702704 was marked as Exhibit C. States that he purchased the typewriter last year either June or July. He didn't say that he had the typewriter when he arrived. States he has a confiscation slip but didn't think he had to save his receipt of purchase. States he never does. . . . [Hearing Examiner] contacted Property and spoke to [Sergeant (Sgt.)] Grim. [Sgt.] Grim pulled the Inmate's file and went through all of the commissary sheets from June and July of 2014. There was no purchase of a typewriter by Inmate[.] He also checked the property book from I block. They write down all the property that is delivered for each block. Inmate [] was not given a

---

**(continued…)**

> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa. C.S. §4101(a).

5

typewriter in either of those months from Property. Also, the Sergeant checked the property card. The only thing on the property card was a TV remote that was purchased in September of 2014.

Inmate states that he never attached 702704 as his Exhibit C. He sent his affidavit as Exhibit C. Inmate offers this as proof. ([Hearing Examiner] notes that all of Inmate's other paperwork is dated and this one is not.)

[Hearing Examiner] believes the written report of [Lt.] Williams over [Inmate's] denial that [he] did not lie in the grievance when he stated he was missing a typewriter, which was neither on any of his prior property sheets, and SCI Greene has no record of him purchasing. Sgt. Grim . . . check[ed] three separate sources in which would have been written a purchase of a typewriter (Inmate stated he purchased after arriving at SCI [Greene]), and he found none. Inmate had a confiscation sheet he received for a typewriter but no purchase receipt. [Hearing Examiner] does not believe that the Inmate ever purchased a typewriter and therefore lie[d] on the grievance stating that his typewriter was missing. [Hearing Examiner] finds a preponderance of evidence to support [the] charge [of lying to an employee].

S.R.R. at 43b. Accordingly, the Hearing Examiner found Inmate guilty of lying to an employee as alleged in Misconduct Number B558353, and imposed a sanction of "90 days DC, effective 3/8/15." *Id.*

Inmate appealed the denial of Grievance Number 546908. In the Final Appeal Decision, the Chief Grievance Officer recounted Inmate's claims for reimbursement "for the deliberate altering of [his] personal property." S.R.R. at 21b. In denying the appeal, the Chief Grievance Officer stated the following:

Regarding your watch, records reflect that it was not in working order. No notes were made on any property sheet indicating what condition the watch was in, only that it was not in working order. In regards to your lamp, records reflect that the condition of your lamp is due to

6

normal wear and tear on the items. No evidence was found to suggest that either of those items were damaged by staff as you suggest.

In regards to your footlocker, there are two property sheets that indicate that your footlocker was and has been in very poor condition. While you do provide [a] property sheet that shows the footlocker to be in "mint condition" records reflect that this is a forged property sheet. Lastly, in regards to your typewriter, no evidence has been found to suggest that you were in possession of a typewriter. This office contact[ed] staff in Correctional Industries and found that there is no record of you successfully purchasing a typewriter. While you attempted four times to purchase one, each time the item was rejected as "exceeded available balance." Therefore, no evidence has been found to suggest that you were ever in possession of a typewriter. Due to this, this office finds that your grievance is frivolous and your requested relief is unwarranted.

*Id.*

On May 3, 2015, and May 4, 2015, Inmate filed two additional grievances regarding the confiscation and destruction of his footlocker. *See* S.R.R. at 24b, 28b. As recounted in the Initial Review Response to his first new grievance:

On 04/22/15, you were in ID 3 cell and staff conducted a shakedown on ID pod. Staff discovered a weapon and contraband in your cell. Misconduct #B558384 was generated and you were found guilty of #36 Possession of contraband and #42 Lying to an employee. You were sanctioned 90 days DC time, effective 06/06/15. On 04/22/15, you were moved to FB-3 cell because of the incident. . . . The 2-10 F Unit property Officers inventoried your property on 05/15/15 and issued you, your in-cell property. Your actions caused you to be moved to F Unit because of the seriousness of the incident.

*Id.* at 24b.

7

As recounted in the Initial Review Response to the second new grievance:

> On 05/14/15, I interviewed Sgt. Trout and he related the following: We received Inmate [] on F Unit from I Unit on 04/22/15. When the Inmate's property arrived from I Unit, I noticed that his footlocker was in very poor condition. No one on the 2-10 F Unit Team dropped his footlocker. The footlocker was transported here from I Unit in that condition. The footlocker was in bad shape and beyond repair. On 04/25/15, the F Unit Property Officer attempted to have Inmate [] sign the confiscated items receipt to destroy his footlocker, but he refused. The C.I.R. was marked as refused, signed by two Officers, and [the footlocker] was destroyed.

S.R.R. at 28b, 56b.

On November 23, 2015, Inmate filed the instant complaint in the trial court, and a subsequent supplemental complaint, asserting the following relevant claims against the Commonwealth Defendants: (1) violation of his rights under the First Amendment to the United States Constitution[5] by filing Misconduct Numbers

---

[5] Section 1983 of Title 42 of the United States Code states, in relevant part:

> Every person who, under color of any statute, . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. "Section 1983 does not create substantive rights but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008) (citation omitted). "To establish a *prima facie* case under 42 U.S.C. §1983, a plaintiff must allege two elements: (1) the action occurred 'under color of state law'; and (2) the action is a deprivation of a constitutional right or a federal statutory right." *Jones v. City of Philadelphia*, 890 A.2d 1188, 1210 (Pa. Cmwlth. 2006) (citation omitted).

8

B751007 and B558353 in retaliation for his filing Grievance Numbers 546908 and 550839; (2) violating his First Amendment rights by willfully destroying his property in retaliation for his filing the foregoing grievances; and (3) conspiracy and supervisory liability based on the foregoing violations. Following discovery,[6] the Commonwealth Defendants filed a motion for summary judgment, which the trial court granted, dismissing Inmate's complaint.

On appeal,[7] Inmate claims[8] that the trial court erred in granting summary judgment with respect to: (1) the First Amendment violation of the filing

---

[6] The initial trial court judge presiding over the matter *sua sponte* dismissed the complaint with prejudice pursuant to Section 6602(e) of the Prison Litigation Reform Act, 42 Pa. C.S. §6602(e), because Inmate's prison conditions action failed to state a claim upon which relief may be granted. However, based on the Commonwealth's concession that this dismissal constituted reversible error, we vacated the trial court's order, reinstated Inmate's complaint, and remanded the matter to the trial court for further proceedings. *See Williams v. Shawley* (Pa. Cmwlth., No. 1149 C.D. 2016, filed January 5, 2017), slip op. at 3.

[7] As this Court has explained:

> Our scope of review of the trial court's order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. Summary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has established entitlement to judgment as a matter of law. "In order to withstand a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to h[is] case and on which []he bears the burden of proof such that a jury could return a verdict in h[is] favor." We must view the record in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment is properly granted only in those cases which are free and clear from doubt.

*Todora v. Buskirk*, 96 A.3d 414, 417 (Pa. Cmwlth. 2014) (citations omitted).

9

of Misconduct Number B751007 based on his filing of Grievance Number 550839; (2) the First Amendment violation of the filing of Misconduct Number B558353 based on his filing of Grievance Number 546908; (3) the associated conspiracy and supervisory liability claims; and (4) the Commonwealth Defendants' "willful destruction of [his] personal property and then destroying the video footage witness[ing] it." Statement of Questions Involved, Appellant's Brief at 2.

## I.

With respect to Inmate's first two appellate claims, as the Pennsylvania Supreme Court has explained:

> Retaliation claims are guided by the United States Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 [] (1987), which held "courts are ill equipped to deal with the increasingly urgent problems of prison administration . . .," and great deference must be accorded to the administrative determinations of prison officials. *Id.* at 84-85 [] (citation omitted). The United States Supreme Court further recognized prison rules and regulations are presumptively valid unless a prisoner proves otherwise. *Overton v. Bazzetta*, 539 U.S. 126, 132 [] (2003).

*Yount v. Pennsylvania Department of Corrections*, 966 A.2d 1115, 1119-20 (Pa. 2009). In order for Inmate to file a successful retaliation claim under the First

---

**(continued…)**

[8] We reorder Inmate's appellate claims in the interest of clarity. *See also* Pa. R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. *No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby*.") (emphasis added).

Amendment, he was required to demonstrate: "(1) he engaged in constitutionally protected conduct[9]; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal." *Richardson v. Wetzel*, 74 A.3d 353, 357 (Pa. Cmwlth. 2013).

In this case, Inmate merely asserts that the temporal proximity between his protected conduct and the filing of Misconduct Number B751007, and the fact that he was not convicted of the disciplinary charges, precludes the entry of summary judgment with respect to that retaliatory claim. *See* Appellant's Brief at 5. However, these allegations alone are not sufficient to demonstrate the second prong outlined above. *See, e.g.*, *Robinson v. Folino* (Pa. Cmwlth., No. 1770 C.D. 2017, filed June 8, 2018), slip op. at 3 (footnote omitted),[10] wherein we stated:

> [The] complaint does not allege facts sufficient to demonstrate an adverse action resulting from [the officer]'s alleged retaliation. Particularly, [the inmate] does not assert that he was actually sent to solitary confinement, as threatened by [the officer]. Furthermore, [the inmate] alleges that, because he filed a grievance against [the officer], he was issued a misconduct; however, that misconduct was ultimately dismissed. Therefore, we conclude that [the inmate] failed to satisfy the *Yount* test and, consequently, did not properly assert a retaliation claim under 42 U.S.C. §1983.

Regarding Misconduct Number B558353, Inmate outlines the conflicting evidence presented to the Hearing Examiner and contends that this does

---

[9] An allegation of retaliation for filing a grievance or a lawsuit against Department staff invokes the First Amendment right of access to the courts. *Yount*, 966 A.2d at 1121.

[10] This unpublished opinion is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

not support the Hearing Examiner's determination of guilt and presents a question of fact precluding the entry of summary judgment on his retaliation claim. *See* Appellant's Brief at 9-15. However, as this Court has explained:

> To determine whether th[e fourth] prong [of the *Yount* test] has been satisfied, this Court has applied the "some evidence" test established in *Hartsfield v. Nichols*, wherein the United States Court of Appeals for the Eighth Circuit concluded that "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing some evidence the inmate actually committed a rule violation." 511 F.3d 826, 831 (8th Cir. 2008) (internal citations omitted). The *Hartsfield* court explained that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation." *Id.* at 831.

*Jordan v. PA Department of Corrections* (Pa. Cmwlth., No. 416 M.D. 2016, filed September 25, 2017), slip op. at 4. Further,

> [in] *Horan v. Newingham*, (Pa. Cmwlth., No. 2622 C.D. 2015, filed October 24, 2016), slip op. at 5[, t]his Court found the "some evidence" standard to be "particularly apt because it [was] consonant with the fourth prong of the *Yount* test, which requires the prisoner to prove that the misconduct [did] not further a legitimate penological goal[.]"

*Jordan*, slip op. at 5.

As outlined above, the Hearing Examiner extensively outlined the evidence upon which she relied to support the determination of guilt and imposition of a penalty with respect to Misconduct Number B558353. *See* S.R.R. at 43b. Additionally, as noted above, Section 93.9(a) of the Department's regulations specifically provides that "an inmate who submits a grievance for

12

review which is false, frivolous or malicious may be subject to appropriate disciplinary procedures." 37 Pa. Code §93.9(a). Moreover, DC-ADM 801 lists "Lying to an employee" as a "Class I [Misconduct] Charge" and as a "prohibited behavior that may result in the commencement of disciplinary procedures."

In light of the foregoing, although Inmate has alleged facts contesting the misconduct determination, Inmate has failed to sustain his burden under the fourth prong of the *Yount* test to state facts rebutting the presumption that the purportedly retaliatory action did not further a legitimate penological goal. In sum, the trial court did not err in granting summary judgment with respect to Inmate's retaliation claims as he failed to allege facts satisfying the requisite second and fourth prongs of the *Yount* test, and Inmate's appellate claims to the contrary are without merit.[11]

## II.

Because Inmate's retaliation claims are meritless, his associated conspiracy and supervisory liability claims are likewise without merit. Indeed, as this Court has stated:

---

[11] *See Jordan*, slip op. at 6, wherein we stated:

> Based upon the foregoing, we conclude that Petitioner failed to meet his burden of establishing a claim to retaliation under the *Yount* test. Although he stated sufficient facts to show he engaged in constitutionally protected conduct, he failed to show that any retaliation against that conduct resulted in adverse action, that the constitutionally protected conduct was a substantial or motivating factor for the alleged retaliation, or that the retaliatory action did not further a legitimate penological goal.

13

> Plaintiff argues that the trial court abused its discretion by dismissing Plaintiff's derivative claims of municipal liability, supervisory liability, and civil conspiracy, based upon its erroneous ruling that there had been no underlying constitutional [retaliation] violation to support those claims. Because we agree with the trial court's conclusion that Plaintiff "failed to produce evidence of facts essential to [his] cause of action," Pa. R.C.P. No. 1035.2, we reject Plaintiff's final argument.

*Todora v. Buskirk*, 96 A.3d 414, 420 (Pa. Cmwlth. 2014). As a result, the trial court did not err in granting summary judgment with respect to Inmate's conspiracy and supervisory liability claims as well.

## III.

Finally, Inmate claims that the trial court erred in granting summary judgment with respect to his claims regarding the willful destruction of his watch, table lamp, footlocker, television, and radio by Department employees. As this Court has explained:

> An action against Commonwealth parties is invalid if barred by provisions relating to sovereign immunity. *Williams* [*v. Stickman*, 917 A.2d 915, 917 (Pa. Cmwlth. 2006)]. Generally, Commonwealth officials and employees acting within the scope of their duties are immune from suit, unless immunity is specifically waived. 1 Pa. C.S. §2310. "[S]overeign immunity [acts] as a bar to an action against Commonwealth parties, for damages arising out of a *negligent act* where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa. C.S. §8522(a) (emphasis added). Although there are delineated exceptions to sovereign immunity, they only apply to claims based in negligence. *Id.*; *see Williams*. Conversely, an action for intentional misconduct is barred by sovereign immunity if the Commonwealth actor was within the scope of his duties.

14

*Williams*, 917 A.2d at 917; *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992); *see* 1 Pa. C.S. §2310. In other words, a Commonwealth defendant may be held liable for negligence if the negligence falls into one of the nine enumerated categories for which immunity has been waived, but may not be held liable for intentional acts, provided he was acting within the scope of his duties. *Williams*; *La Frankie*.

Here, [the inmate] has alleged no cause of action for which sovereign immunity has been waived. [The inmate] sets forth a claim for damages for conversion. Our Supreme Court has defined conversion as "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn National Bank*, 254 A.2d 637, 638 (Pa. 1969). A claim for conversion arises from an intentional, and not a negligent act,[12] thereby entitling the Commonwealth defendants to sovereign immunity. *See Williams*, 917 A.2d at 917; *see also Stokes v. Gehr* (Pa. Cmwlth., No. 332 C.D. 2011, filed October 19, 2011), *appeal denied*, 40 A.3d 1238 (Pa. 2012).

*Price v. Simcox* (Pa. Cmwlth., No. 397 C.D. 2017, filed September 28, 2017), slip op. at 4-5 (footnotes omitted). In the case *sub judice*, Inmate does not allege that the Department employees were not acting within the scope of their employment at the time of the purported "willful destruction of [his] personal property." As a result, they are immune from liability in this matter. *Id.*

Nevertheless, Inmate asserts that sovereign immunity from liability for these claims has been waived pursuant to Section 8550 of the Judicial Code.[13]

---

[12] *See Norriton East Realty Corp.*, 254 A.2d at 638 ("Prosser describes the following ways in which a conversion can be committed: . . . '[] Unreasonably withholding possession [of a chattel] from one who has the right to it[; or] Seriously damaging or misusing the chattel in defiance of the owner's rights.' Prosser, Torts §15 (2d ed. 1955).").

[13] 42 Pa. C.S. §8550. Section 8550 states:
**(Footnote continued on next page…)**

*See* Appellant's Brief at 18, 20. However, by its terms, Section 8550 only applies to local employees and the Department employees named herein are Commonwealth employees subject to sovereign immunity. *See Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Cmwlth. 1997), wherein we stated, in relevant part:

> [A]n employee of the Commonwealth . . . acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims. Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts . . . .
>
> In this case, it is not disputed that the Commonwealth defendants were acting other than within the scope of their employment. . . .
>
> Because the record clearly supports that the Commonwealth defendants were acting within the scope of their employment when the acts alleged by [the employee] were allegedly committed, they are immune

---

**(continued…)**

> In any action against *a local agency or employee thereof* for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

*Id.* (emphasis added).

16

from liability and the counts against them were properly dismissed.

Likewise, in the instant matter, the trial court properly granted summary judgment with respect to the claims raised regarding the purported "willful destruction of [Inmate's] personal property" by the named Department employees.[14]

Accordingly, the trial court's order is affirmed.[15]

---

[14] As a corollary to this claim, Inmate seeks damages for the purported intentional destruction of video evidence. However, as outlined above, the named Department employees are immune from suit with respect to any purported intentional tort in this regard. Moreover, a cause of action for negligent spoliation of evidence does not exist under Pennsylvania law. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692-695 (Pa. 2011).

[15] "This Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." *Commonwealth v. Williams*, 73 A.3d 609, 617, n.4 (Pa. Super. 2013) (citation omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| La-Qun Williams, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1250 C.D. 2018 |
| | : | |
| Tracy Shawley, et al. | : | |

**PER CURIAM**

## **O R D E R**

AND NOW, this 27th day of June, 2019, the order of the Greene County Court of Common Pleas dated May 22, 2018, is AFFIRMED.