DLD-213                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1337
_____

MARTY DUNBAR,
                                    Appellant

v.

M. BARONE, Superintendent; E.J. WOJCIK; K.L. GRANLUND; M. OVERMEYER; T.
RISKUS; E. MONGELLUZZO; DUNCAN; C. CUSTER; HALL; REITZ; FLOCKERZI;
K.P. REISINGER; C. KENNEDY; ROBERT DOE; JOHN DOE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civ. No. 1-09-cv-00245)
Magistrate Judge:  Honorable Maureen P. Kelly
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 28, 2012

Before:  AMBRO, JORDAN and VANASKIE, Circuit Judges

(Opinion filed: July 10, 2012)
_____

OPINION
_____

PER CURIAM

     Marty Dunbar, an inmate of the State Correctional Institution at Forest in

Marienville, Pennsylvania ("SCI-Forest") filed a pro se civil rights complaint pursuant to

42 U.S.C. § 1983 in October 2009. He alleged that various prison employees and officials had violated his First, Fifth, Eighth, and Fourteenth Amendment rights. In general, Dunbar complained that security staff at SCI-Forest harassed him in retaliation for his legal work and efforts to expose the behavior of prison staff. He claimed that staff searched his cell, interfered with his mail, and confiscated his legal documents. He also alleged that some staff members harassed him on the basis of his race by putting pillowcases on their heads to mimic Ku Klux Klan hoods, making gestures similar to the Nazi salute, and posting an offensive picture on his cell door. Dunbar further claimed that he was falsely charged with misconduct, which he later revealed was the sexual assault of another inmate. He complained that the hearing examiner did not allow him to call witnesses at his misconduct hearing, at which he was sentenced to 540 days in disciplinary custody. He also contended that the Grievance Coordinator refused to process some of his grievances. Dunbar was permitted to file an amended complaint, which clarified that he was suing the Defendants in their official and personal capacities.

The parties consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). The Defendants moved for summary judgment,[1] arguing that Dunbar had failed to exhaust his administrative remedies for most claims and that all claims lacked merit. Dunbar responded and filed a motion for a temporary restraining

---

[1] Defendant Wojcik did not participate in the motion because Dunbar had previously dismissed him from the suit. The Magistrate Judge later dismissed the "Doe" Defendants because Dunbar did not identify or serve them.

order as well as a request for a hearing on the motion. The Magistrate Judge granted the Defendants' motion for summary judgment and denied Dunbar's motions as moot. Dunbar now appeals from that order.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. If no substantial question is presented, we may summarily affirm the Magistrate Judge's order on any ground supported by the record. See 3d Cir. L.A.R. 27.4; IOP 10.6; Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). We exercise plenary review over the decision to grant summary judgment. See Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998). Summary judgment is appropriate only if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We agree that the Defendants were entitled to summary judgment. Dunbar complained that several Defendants threatened him by telling him to give up his legal campaign, and by remarking that he was a marked man and that his days were numbered. A grievance Dunbar filed regarding one incident also alleged that a Defendant threatened to send him to another housing unit and write him up for an alleged infraction. However, verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment. See e.g., McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). Similarly, the display of white pillowcase hoods, Nazi salutes, and the posting of an offensive picture, while unprofessional and reprehensible, do not amount to a violation of constitutional rights,

3

even if those things occurred.  See, e.g., Wright v. Santoro, 714 F. Supp. 665, 667

(S.D.N.Y. 1989) (holding that racial remarks, without more, are insufficient to allege a

constitutional violation).

Dunbar also claimed that the Defendants harassed him in retaliation for

corresponding with civil rights organizations.   Assuming that he was engaged in

constitutionally protected activity, we note that Dunbar also had to show that the

Defendants' actions were sufficiently adverse to deter a person of ordinary firmness from

engaging in the protected activity in order to prevail on the retaliation claim.  Rauser v.

Horn, 241 F.3d 330, 333 (3d Cir. 2001).  In the prison context, we have held that the

following actions were sufficient to establish adversity:  several months in disciplinary

confinement; denial of parole, financial penalties, and transfer to an institution whose

distance made regular family visits impossible; and placement in administrative

segregation that severely limited access to the commissary, library, recreation, and

rehabilitative programs.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003);  Rauser,

241 F.3d at 333; Allah v. Seiverling, 229 F.3d 220, 225-26 (3d Cir. 2000).  In

comparison, the verbal threats and few gestures of racial harassment Dunbar allegedly

encountered are not sufficiently adverse to support a retaliation claim under the

circumstances of this case.

The Defendants are also entitled to summary judgment on Dunbar's allegation that

a false misconduct charge was brought against him in retaliation for his legal activities.

4

Assuming that Dunbar established a prima facie case for retaliation,[2] we note that the Defendants may still prevail by proving that they would have made the same decision "for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In this case, the Defendants provided adequate evidence that they would have charged Dunbar with misconduct even if he had not been involved in legal activities. He was charged with a number of offenses, including the assault and rape of another inmate. The misconduct report indicated that other inmates in the unit called a hotline and that the victim came forward when the investigation commenced. The hearing report indicates that the hearing officer interviewed the victim, who gave a statement under oath describing the assault, rape, and other offenses. The examiner determined the victim to be more credible than Dunbar, who simply testified that nothing happened and that the victim was setting him up. The record shows that the decision, and 540 day sentence, were sustained on all levels of administrative appeal. Dunbar's unsupported assertion that the charges were fabricated in retaliation for his legal activities is insufficient to create a genuine issue for trial. See Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991) (noting that a party resisting summary judgment may not rest on mere allegations, general denials, or vague statements). Rather, the evidence of record concerning Dunbar's guilt of serious offenses tends to show that the Defendants' action was

---

[2] To make a prima facie case for retaliation, a prisoner must show that his conduct was constitutionally protected, he suffered adverse action at the hands of prison officials, and his protected conduct was a substantial motivating factor in the decision to discipline him. Rauser, 241 F.3d at 333.

reasonably related to a legitimate penological interest and that Dunbar would have been charged with misconduct notwithstanding his legal activities.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (affirming summary judgment in favor of defendants on retaliation claim where "the quantum of evidence" of the prisoner's misconduct showed that he would face disciplinary action notwithstanding his protected activity); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding of "some evidence" in support of a disciplinary determination "checkmates" a retaliation claim).

Dunbar made two allegations that can be construed as denial of access to the courts claims under the First Amendment:  that the Defendants interfered with his mail and confiscated his legal documents, and that one of the Defendants refused to process his grievances.  An inmate who alleges a violation of the right of access to the courts must show actual injury.  Lewis v. Casey, 518 U.S. 343, 349-50 (1996).  This can be done by showing that the Defendants' actions resulted in the loss or rejection of a claim. Id. at 351.  Dunbar did not plead or present any evidence that he had any lawsuits pending during the period in which he complained that the actions occurred.  And to the extent that some of his filings can be interpreted as alleging that the interference with his mail affected the instant lawsuit, Dunbar did not specifically identify any claims that were lost or rejected due to the alleged interference.  Furthermore, Dunbar has now received judicial review of the claims that he alleges he was prevented from pursuing via the grievance process.  Accordingly, he has not established actual injury.

Dunbar's remaining claim is that his procedural due process rights were violated

6

when the hearing officer did not permit him to call witnesses at the misconduct hearing. He alleges that he was never given the form used to request witnesses and thus was denied his right to call witnesses. A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence. Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974). But this due process right is not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Dunbar was placed in disciplinary custody for 540 days (about eighteen months) as a result of his misconduct. He did not present any evidence that the conditions he faced in disciplinary custody amounted to an "atypical and significant hardship" under Sandin, and we have held that this type of confinement does not constitute an "atypical and significant hardship." See Griffin v. Vaughn, 112 F.3d 703, 705-07 (3d Cir. 1997) (ruling that fifteen months in segregation was not an atypical and significant hardship); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months in disciplinary confinement did not implicate a protected liberty interest). Because Dunbar failed to establish a protected liberty interest, his due process claim necessarily fails.[3]

---

[3] Dunbar also made a general allegation that the Defendants violated the Fifth Amendment. As the Magistrate Judge explained, the only provision of the Fifth Amendment potentially implicated by the complaint is the due process clause. As that provision concerns only federal action, and Dunbar's lawsuit concerned only action by

For these reasons, the Magistrate Judge properly granted Defendants' motion for summary judgment and denied Dunbar's then-pending motions as moot. There being no substantial question presented by this appeal, we will summarily affirm the Magistrate Judge's order. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

---

state defendants, the Fifth Amendment is not applicable.