# United States Court of Appeals
## For the First Circuit

No. 17-2078

JANE DOE,

Plaintiff, Appellant,

v.

HARVARD PILGRIM HEALTH CARE, INC.; HARVARD PILGRIM PPO PLAN
MASSACHUSETTS, GROUP POLICY NUMBER 0588660000,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Mala M. Rafik, with whom Sarah E. Burns and Rosenfeld & Rafik,
P.C. were on brief, for appellant.
Peter S. Sessions, Lisa S. Kantor, and Kantor & Kantor LLP,
on brief for National Alliance on Mental Illness, amicus curiae.
Jonathan M. Feigenbaum on brief for United Policyholders and
Health Law Advocates, Inc., amici curiae.
Christine Zaleski, with whom Steven L. Schreckinger and
Anderson & Kreiger LLP were on brief, for appellees.

September 6, 2018

**KAYATTA**, <u>Circuit Judge</u>.   Jane Doe's insurer, Harvard Pilgrim Health Care ("HPHC"), deemed part of the time Doe spent at a mental health residential treatment facility not medically necessary under the health care benefits plan established by the employer of Doe's parent.   HPHC therefore denied coverage for that portion of the treatment.   After several unsuccessful administrative appeals, Doe sued HPHC in federal court under the Employee Retirement Income Security Act ("ERISA").   29 U.S.C. §§ 1001–1461.   On de novo review, the district court agreed with HPHC's determination that continued residential treatment was not medically necessary for Doe.   We conclude that the administrative record upon which the district court based its finding should have been supplemented.   We therefore reverse in part, vacate in part, and remand for further proceedings.

## I.

### A.

The following facts are undisputed.   On January 17, 2013, Doe was admitted to the Austen Riggs Center ("Riggs") in Stockbridge, Massachusetts for residential mental health treatment.   She was experiencing psychosis, suicidal ideation, depression, and anxiety.   At the time, Doe was insured under her father's employer-provided HPHC plan (the "Plan").   HPHC contracted with another insurance company, United Behavioral

Health ("UBH"), to manage mental health services. In order for services to be eligible for coverage under the Plan, they must be, among other things, "medically necessary," a standard defined in the Plan with a degree of detail that is not relevant to what we ultimately decide on this appeal.

HPHC approved coverage for an initial residential stay at Riggs. But on February 5, 2013, HPHC, acting through UBH, informed Doe by letter that it would not cover additional time spent at Riggs because further residential treatment was not medically necessary. As UBH explained in the letter, it based this denial on the assessment of UBH's Associate Medical Director, Dr. James Feussner. The letter informed Doe that she had the right to appeal the denial of benefits to UBH/HPHC, on a standard or expedited basis, and that she might also be eligible for an external appeal.

Doe requested an expedited appeal. Pursuant to the Plan, HPHC continued to cover Doe's residential treatment through the completion of the internal appeal process. On February 12, 2013, HPHC denied Doe's appeal and upheld the determination that further residential treatment was not medically necessary. In the February 12 letter, HPHC explained that it based its "final decision on [Doe's] appeal" on an assessment by independent psychiatrist Dr. Michael Bennett. The letter also advised Doe

that she might be eligible for an external review through the Massachusetts Department of Public Health's Office of Patient Protection ("OPP") and might also be able to pursue legal action.

Despite the fact that residential treatment services would not be covered beginning on February 13, Doe remained at Riggs. On her daughter's behalf, Doe's mother filed a request for an expedited external appeal with the OPP. As part of that request, Doe's mother signed two authorizations allowing the release of all relevant medical or treatment records and all relevant psychotherapy notes for review in the appeal. The reviewer engaged by the OPP to conduct the review wrote Doe on March 12, 2013, upholding the denial of continued residential treatment based on the assessment of a board-certified psychiatrist. At her parents' expense, Doe stayed at Riggs until mid-June. On June 18, 2013, Doe was discharged and admitted to a higher level of care -- an inpatient facility -- for several days. On June 24, 2013, she was re-admitted to Riggs, where she remained until August 7, 2013. HPHC paid for Doe's inpatient stay in June 2013, as well as her entire second admission to Riggs from June 24, 2013 to August 7, 2013, so coverage for these stays is not at issue in this appeal.

**B.**

At some point after HPHC denied Doe's expedited appeal, Doe retained counsel. In February 2014, Doe's attorney wrote to HPHC expressing a desire to resolve the dispute "amicably rather than through litigation." She enclosed with the letter Doe's complete medical records from Riggs spanning both admissions (January 17, 2013 to August 7, 2013,[1] minus the brief period spent in inpatient treatment in June 2013), as well as a narrative report from Doe's treating psychologist, Dr. Sharon Krikorian.

Giving a preview of her position in litigation should it come to that, Doe's attorney also asserted that because neither UBH, HPHC, nor the external reviewer had reviewed the complete medical records, their reviews were incomplete and did not comply with ERISA. In short, counsel took the position that the record of how Doe's actual treatment played out after HPHC's denial of coverage was relevant to determining whether her stay at Riggs between February 13 and her first discharge was medically necessary. Counsel requested that HPHC reverse its February 12 decision and reimburse Doe for the uncovered portion of her stay. HPHC denied this request on July 23, 2014, asserting that it had reviewed Doe's February 19 "letter, the accompanying documents and

---

[1] The letter identifies the closing date as August 14, rather than August 7, but this appears to be a typographical error.

- 5 -

the underlying case" but that it agreed with its previous decisions and upheld its denial "for the reasons previously stated."

Doe eventually sued HPHC and the Plan in March 2015 challenging the denial of coverage and seeking reimbursement for the cost of her uncovered residential treatment from February 13, 2013 through June 18, 2013.  Before the newly filed lawsuit moved forward, in-house counsel for HPHC contacted Doe's attorney and asserted for the first time that Doe had failed to exhaust her administrative remedies.  At this point, HPHC's exhaustion argument appeared to be directed at claims that were submitted to HPHC after it concluded its initial internal appeal on February 12, 2013 and thus were never, in HPHC's view, "actually formally appealed."  HPHC offered to waive the expired deadline and conduct a formal appeal of these claims.

With Doe's attorney contesting the failure-to-exhaust contention, the two sides then proceeded to do what good lawyers do.  They continued to explore the possible settlement of the underlying dispute.  Unsuccessful, they nevertheless did agree to the parameters for a renewed review of Doe's claim for benefits by HPHC (to which we will refer as the post-filing review), including a specification of which documents HPHC would consider and the time frame in which it would conduct the review.  In preparation for the post-filing review, HPHC provided Doe with all of the

denial letters associated with Doe's claims and the clinical rationale relied upon in reaching those decisions. In response, Doe provided HPHC with Doe's complete medical records from both admissions at Riggs (spanning January 17, 2013 to August 7, 2013), a narrative report prepared by Dr. Krikorian, and a report prepared by Dr. Edward Darell regarding Doe's second admission to Riggs. Finally, the parties jointly secured several extensions of the deadline for HPHC to answer Doe's complaint to allow for completion of the post-filing review.

On September 30, 2015, HPHC informed Doe by letter that it was still denying coverage for the disputed period (February 13, 2013 to June 18, 2013), this time based on the opinion of HPHC Medical Director Dr. Joel Rubinstein. HPHC explained that Dr. Rubinstein had reviewed various documents (including Doe's medical records and her case file), had spoken with Doe's providers at Riggs, and concluded that continued residential treatment was not medically necessary. HPHC attached Dr. Rubinstein's review to its letter.

After Doe requested an opportunity to respond to HPHC's denial, the parties filed in October a joint motion to stay the case. In their motion, the parties explained that they had "agreed to permit Ms. Doe to complete a pending Administrative Review" of her claims. They further stated that "[d]ocuments submitted or

generated as part of the Administrative Review[] will be part of the Administrative Record in this case."

Two months after the parties filed the motion to stay, on December 3, 2015, Doe sent HPHC a letter responding to its September 30 decision. In that letter, Doe explained that "[p]ursuant to the parties' agreed-to parameters of HPHC's medical review," she was submitting additional information responding to Dr. Rubinstein's review. This information included a report by an independent psychiatrist, Dr. Gregory Harris, and a letter by Riggs's Associate Medical Director, Dr. Eric Plakun.

On February 5, 2016, the parties filed a joint status report informing the court that HPHC "require[d] additional time to complete the Administrative Review and to respond to the materials submitted by [Doe]." On February 26, 2016, the parties filed a second joint status report stating that HPHC had "considered [Doe's] additional information" and would soon provide Doe with "a detailed response denying the claims." That same day, HPHC sent Doe a letter explaining that it had reviewed the additional documentation Doe had submitted on December 3, including the opinions of Dr. Harris and Dr. Plakun, and that it was "upholding its prior decisions." HPHC noted that nothing had been submitted, in the course of what it characterized as "this

voluntary administrative review, . . . that would give [it] grounds to alter its previous coverage determinations."

When litigation resumed, the district court ordered HPHC to provide Doe with a proposed record for judicial review. HPHC filed with the court an administrative record that included Doe's medical records from her first admission to Riggs. Contrary to the parties' prior agreement as expressed in the October motion to stay, the records HPHC submitted did not include the other records "submitted or generated as part of" the post-filing review. In particular, HPHC's submitted record did not include the medical records from Doe's second admission, Dr. Darrell's review, or the additional reports of Drs. Harris and Plakun that Doe submitted as part of her December 3, 2015 letter.

Doe then filed a motion to expand the scope of the administrative record submitted by HPHC so that it would be consistent with the parties' prior representation to the court. Doe specifically requested that the district court include four additional categories of documents: (1) medical records from Doe's second admission to Riggs; (2) communications between counsel related to both admissions and to the post-filing review; (3) the post-filing review HPHC conducted, including the report of Dr. Rubinstein; and (4) the additional documents Doe submitted in response to Dr. Rubinstein's review, including the reports of

Drs. Harris and Plakun. The district court held a hearing at which it partially granted Doe's motion. The court declined to include medical records or communications related to Doe's second admission to Riggs, for which HPHC granted coverage. But it noted that the parties had agreed to include medical records from Doe's first admission (the February to June 2013 period), and found that it was therefore proper to also include the additional expert reports of Drs. Harris and Plakun, as well as Dr. Rubinstein's review, HPHC's post-filing denial letter of September 30, 2015, and HPHC's post-filing denial letter of February 26, 2016.

Two months later, on the same day that she filed a motion for summary judgment, Doe filed a second motion to expand the scope of the record to include the narrative report of Dr. Krikorian that Doe had submitted as part of the post-filing review. When the district court subsequently issued its summary judgment order, it not only denied Doe's second motion to further expand the scope of the administrative record, but it also reconsidered portions of its ruling on Doe's first motion. Upon determining in its summary judgment ruling that the OPP's March 12, 2013 decision constituted the final administrative decision in Doe's case, the court limited its de novo review to medical records and other documents that

were generated through that date and excluded any documents created afterward, including the reports of Drs. Harris and Plakun.[2]

Having thus defined the administrative record to exclude Doe's submissions in the post-filing review, the district court turned its attention to the merits of the benefits denial. The district court had determined, as a threshold matter, that because the Plan documents did not expressly provide for discretionary authority on the part of HPHC in determining medical necessity, the proper standard of review was de novo. Applying this standard, the court then determined that continued residential treatment at Riggs was not medically necessary for Doe. Finally, the court found that HPHC had complied with ERISA in providing a full and fair review of Doe's claim and that, even if that were not the case, Doe had failed to show prejudice.

Doe now appeals.

## II.

Doe challenges both the district court's definition of the administrative record and its finding on the merits against her based on that record. We address each challenge in turn.

---

[2] The court noted that although the OPP report reflects that the external reviewer considered Doe's medical records, "[i]t does not provide an end date for those records." In response to this uncertainty, the district court took an "expansive view and reviewed Jane's medical records up to and including March 12, 2013 as part of the administrative record."

We begin with the dispute about the record. The parties spar over the appropriate standard of review for determining whether the district court erred in denying Doe's motions to expand the scope of the administrative record, with Doe advocating for de novo review and HPHC arguing for abuse of discretion. We need not resolve this question today because, while we offer no criticism of the district court's care and diligence in attempting to determine the proper scope of the record, under either standard we disagree with its ultimate determination. Our reasoning follows.

In a denial of benefits case, "[t]he decision to which judicial review is addressed is the final ERISA administrative decision." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). "[T]he final administrative decision acts as a temporal cut off point" and, absent a good reason, courts reviewing that decision are limited to evidence that was presented to the administrator. Id. at 519-20 ("We need not catalogue the situations in which new evidence is admissible, other than to note it is more obviously relevant when the attack is on the process of decision making as being contrary to the statute than on the substance of the administrator's decision."); see also Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) ("[A]t least some very good reason is needed to overcome the strong

presumption that the record on review is limited to the record before the administrator.").

So, we ask, first, was the "final administrative decision" OPP's denial of Doe's appeal or HPHC's completion of the post-filing review? The parties' currently differing positions on this question are premised on their respective views of the post-filing review. HPHC argues that the post-filing review was "undertaken in the spirit of conciliation" as part of settlement discussions and did not reopen Doe's administrative case. HPHC thus maintains that the OPP's decision on March 12, 2013 was the final administrative decision for purposes of this suit. Doe counters that HPHC voluntarily reopened Doe's administrative proceeding, which ultimately concluded with the final decision HPHC issued on February 26, 2016, and that HPHC should be bound by its agreement concerning the record.

The beginning portion of the record contains some ambiguity on this question. As we noted, HPHC's initial assertion of Doe's failure to exhaust administrative remedies, as part of its offer of an additional "formal appeal," does align with HPHC's assertion in its appellate briefing that its reference to Doe's failure to exhaust administrative remedies was limited to the invoices that Riggs, not Doe, submitted to HPHC after the OPP decision. And in one of Doe's responses to HPHC's offer, she

opened her email with "Thank you for kicking off our combined efforts to settle this matter." These interactions suggest that there was some initial uncertainty among the parties regarding what precise claims required exhaustion and whether they were exploring a continuation of the administrative process concerning the denied claims or a settlement negotiation.

But by October 2015, when the parties filed a joint motion to stay the case and HPHC filed its accompanying answer, any ambiguity was gone. As we have noted, the parties moved to stay the case after HPHC had denied Doe's post-filing appeal based on the assessment of Dr. Rubinstein and after HPHC had agreed to allow Doe to respond to that denial, but before Doe had submitted the additional reports of Drs. Harris and Plakun. In their motion, the parties informed the court that they had "agreed to permit Ms. Doe to complete a pending Administrative Review of her health insurance benefits claims prior to proceeding further with this federal court action." They went on: "Documents submitted or generated as part of the Administrative Review[] will be part of the Administrative Record in this case." Finally, the parties explained that "staying this case will permit the parties to complete the Administrative Review of Ms. Doe's benefits claims and provide the Court with a complete Administrative Record to review, or, in the alternative, moot this action in its entirety."

So, HPHC explicitly agreed -- twice in a two-page document -- that documents submitted or generated as part of Doe's pending "Administrative Review" would be included in the administrative record before the court.

The parties each had good reason to reopen the review and the record. Doe had accused HPHC of conducting a deficient review. HPHC had accused Doe of waiving her rights by failing to exhaust administrative remedies. Continuing or reopening the administrative review had the potential to eliminate both of those threatened procedural parries.

The district court acknowledged the parties' clear agreement, but for three reasons decided not to enforce it. We review each reason in turn.

First, the district court relied on prior circuit precedent rejecting efforts of a party to supplement the administrative record after a final administrative decision is made. See Orndorf, 404 F.3d at 520; Liston, 330 F.3d at 23. Of course, this precedent begs the question of when the final administrative decision was made. More importantly, in those cases, one party sought to expand the record more broadly than the other. See Orndorf, 404 F.3d at 519 (noting plaintiff's argument that the trial judge "should have admitted evidence outside of the administrative record"); see also Denmark v. Liberty Life

- 15 -

Assurance Co. of Bos., 566 F.3d 1, 9-10 (1st Cir. 2009) (summarizing the parties' differing positions on the permissible scope of discovery in ERISA cases); Liston, 330 F.3d at 23-24 (noting that plaintiff's argument regarding the impropriety of summary judgment was based on evidence beyond the administrative record). Here, both parties expressly agreed to reopen (or continue) the administrative proceeding and both agreed that the additional records submitted as part of that reopening would not only be considered in the additional review but would also become part of the administrative record before the district court. In none of our cases have we suggested that an ERISA fiduciary can unilaterally walk away from a clear agreement with the beneficiary concerning the status of an administrative review under a plan.

Second, the district court was concerned that allowing Doe to supplement the record might deter future claims fiduciaries from trying to settle lawsuits. While we understand this concern, we clearly do not have a settlement or mediation event here. The process undertaken by the parties after Doe filed suit did not look like a settlement or mediation. HPHC did not offer Doe a sum of money or other compensation as an incentive to drop her suit. Nor did the additional review consist of negotiations regarding a final resolution of the dispute. Rather, HPHC received information from Doe under an express agreement concerning the nature and

- 16 -

effect of the post-filing review and then made an up or down decision as it would in normal course. Moreover, this is not a situation in which a court is being asked to infer the reopening of the record from the parties' continued talking or negotiating, with or without the submission of new information. Rather, we have an express agreement between the parties that records from a renewed review would be part of the administrative record. Holding HPHC to the terms of that agreement poses no risk that other claims fiduciaries will accidentally find themselves in the same boat without such an express agreement to get on board.

Third, the district court believed that technical requirements under ERISA precluded honoring the parties' agreement. Taking to heart our instruction that "the plain language of the plan provisions should normally be given effect," Doe v. Harvard Pilgrim Health Care, Inc., 15-CV-10672, 2017 WL 4540961, at *10 (D. Mass. Oct. 11, 2017) (quoting Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 117 (1st Cir. 2017) (Stephanie C. II)), the district court determined that the post-filing review undertaken by the parties "was not an administrative review as defined by the Plan," id. Our case law, though, acknowledges that ERISA administrative reviews can be reopened and their records supplemented. In Gross v. Sun Life Assurance Co. of Canada, 734 F.3d 1 (1st Cir. 2013), we considered

- 17 -

an appeal from the denial of long-term disability benefits.  After reviewing the medical evidence in the record and nine days of video surveillance of the claimant, which arguably undermined the medical evidence, we determined that "we ha[d] no choice but to remand" to the claims administrator, id. at 27, for reconsideration on a supplemented record, id. at 28.  We see no reason why parties should not be allowed to do the same thing by express agreement.

HPHC counters, puzzlingly, that the agreement it made regarding the record in the motion to stay "concerns the documents that will constitute the Administrative Record and not whether the OPP decision would no longer be treated as the Final Administrative Decision for the purpose of judicial review."  Relatedly, it asserts that the joint motion "relates only to those documents that are relevant to the Final Administrative Decision on March 13, 2013."  But the joint motion was quite clear that the parties understood the "Administrative Review" to include the post-filing review -- which the joint motion explicitly said had yet to be completed -- and that documents submitted or generated as part of that pending process would be incorporated into the administrative record for the court "in this case" "to review."  Notably, the stay not only allowed both parties to supplement the record, but also mooted Doe's argument that HPHC's first review was inadequate under ERISA for failure to consider all relevant information.

HPHC's second line of defense is that an agreement to alter the date of the final administrative decision, a move it contends would fundamentally alter the case, "would not have been made in such a cryptic and cursory fashion." We see nothing cryptic about the parties' agreement. And HPHC does not elaborate further.

We are left with no persuasive argument that we should allow HPHC to avoid its agreement to include documents from the post-filing review in the administrative record that the district court considers in its de novo review of the benefits denial. In the words of Orndorf, we hold that there is more than "good reason" here to deem the documents submitted to HPHC during the post-filing review to be part of the record upon which the merits of this case should turn.

One loose end remains concerning the scope of the administrative record. Neither party advances as a backup argument that HPHC's September 30, 2015 decision based on Dr. Rubinstein's review -- rather than its February 26, 2016 decision that also considered the reports of Drs. Harris and Plakun -- qualifies as the final administrative decision. We nevertheless address this question briefly, because it has implications for the district court's analysis on remand. In short, HPHC itself appears to have viewed its February 26 determination as the completion of the post-

filing review process.  In its February 2016 letter, HPHC described its decision as HPHC's "concluding remarks on the informal review process the parties agreed to undertake" and informed Doe that it "ha[d] now completed its informal review."  We see no reason to question HPHC's apparent view that whatever process began with its offer to conduct a post-filing review, that process ended on February 26, 2016.

In sum, we conclude that the administrative record for purposes of reviewing the benefits decision in this case includes the documents submitted or generated as part of the post-filing review process as concluded on February 26, 2016.  This includes all of Doe's medical records from both admissions to Riggs, as well as the reports of Dr. Darrell, Dr. Harris, Dr. Plakun, and Dr. Krikorian.

**B.**

We turn next to deciding our own standard for reviewing the merits of the benefits denial.  The two choices urged by the parties are de novo, as urged by Doe, and clear error, as urged by HPHC.  The choice makes a difference in how we proceed.  If our review of the merits decision is de novo, then it is of no moment that the district court based its own decision on a truncated record.  All the documents that should have been included in the record are docketed and filed in this case.  So we could conduct

a de novo review without any remand. Cf. Gross, 734 F.3d at 16 ("Given that we play the same role as the district court in evaluating [the administrator's] denial of benefits, we have chosen not to remand to that court for application of the correct, de novo, standard for reviewing [the administrator's] decision."). Conversely, if we review only for clear error the district court's decision affirming de novo HPHC's denial of benefits, then we need remand to the district court so that it can first make its decision on the proper record.

We recently observed that our precedent on the proper standard of appellate review of district court de novo findings in ERISA cases is "murky." Stephanie C. II, 852 F.3d at 109-12. In Orndorf, we applied de novo appellate review. 404 F.3d at 516-18. Subsequently, though, we applied clear error review. See Tsoulas v. Liberty Life Assurance Co. of Bos., 454 F.3d 69, 75 (1st Cir. 2006). In Stephanie C. II, we noted "the tension in our decisions" and reflected on many of the relevant considerations bearing on this issue, ultimately finding that we did not need to decide the issue there. 852 F.3d at 112. With the benefit of that discussion, and the Supreme Court's more recent opinion in U.S. Bank National Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC, 138 S. Ct. 960 (2018), we now hold that when a district court examines the denial of ERISA benefits de

novo, we review the court's factual findings only for clear error.[3] Our reasoning follows.

We begin with the observation that it is our general practice to review factual determinations for clear error. For example, when faced with an appeal from a bench trial, we review factual findings by the district court for clear error, even where those findings are based on physical or documentary evidence rather than credibility determinations. See Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985)); see also Mullin v. Town of Fairhaven, 284 F.3d 31, 36–37 (1st Cir. 2002) (same rule applies to judgment on partial findings). This practice extends well beyond bench trials, see, e.g., Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013) (ruling on a motion for a preliminary injunction); Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018) (factual determinations in fixing damages); Blattman v. Scaramellino, 891 F.3d 1, 3 (1st Cir. 2018) (federal common law of attorney-client privilege), and applies in the criminal context as well, see, e.g., United States v. McDonald,

---

[3] We offer no opinion on the standard of appellate review that applies when the district court reviews a discretionary determination by a plan administrator under the arbitrary and capricious standard.

- 22 -

804 F.3d 497, 502 (1st Cir. 2015) (motion to suppress); United States v. Giggey, 867 F.3d 236, 242 (1st Cir. 2017) (sentencing).

Doe does not dispute that the district court's finding regarding medical necessity is factual in nature. Cf. Stitzel v. N.Y. Life Ins. Co., 361 F. App'x 20, 28 (11th Cir. 2009) (per curiam) (noting that whether claimant's care is "medically necessary" is a factual determination); Rush v. Parham, 625 F.2d 1150, 1153–54 (5th Cir. 1980) (treating issue of whether transsexual surgery was medically necessary as factual in nature). And Doe points us to nothing in ERISA that would cause one to doubt the application of this general practice of clear error review.

That this ERISA case arrived at our doorstep after being resolved under the rubric of summary judgment does not give us reason to depart from the general rule. In the ERISA context, "[t]he burdens and presumptions normally attendant to summary judgment practice do not apply." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 425 n.2 (1st Cir. 2016) (Stephanie C. I) (citing Scibelli v. Prudential Ins. Co. of Am., 666 F.3d 32, 40 (1st Cir. 2012)). Rather, a motion for summary judgment in an ERISA case, like in other administrative law contexts, is simply a vehicle for teeing up the case for decision on the administrative record. See Doe v. Standard Ins. Co., 852 F.3d 118, 123 n.3 (1st Cir. 2017) (quoting Stephanie C.

I, 813 F.3d at 425 n.2)); Boston Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016). In reaching its decision on the record, a district court on de novo review "may weigh the facts, resolve conflicts in the evidence, and draw reasonable inferences." Stephanie C. II, 852 F.3d at 111; see also U.S. Bank, 138 S. Ct. at 967 (explaining that when mixed questions of law and fact require a court to "marshal and weigh evidence . . . appellate courts should usually review [the resulting] decision with deference"). In this way, summary judgment in the ERISA context is akin to judgment following a bench trial in the typical civil case.

To the extent ERISA benefits cases are analogous to administrative law cases, that comparison also points toward deferential review. In the case of many administrative adjudications, we receive appeals directly from the agency. See, e.g., Santos-Guaman v. Sessions, 891 F.3d 12 (1st Cir. 2018) (Board of Immigration Appeals); Southcoast Hosps. Grp., Inc. v. NLRB, 846 F.3d 448 (1st Cir. 2017) (National Labor Relations Board). And in those cases -- even without an intermediate level of review comparable to that performed by the district court here -- we defer to factual findings of the administrator, generally via the substantial evidence standard. See, e.g., Santos-Guaman, 891 F.3d at 16; Southcoast Hosps. Grp., 846 F.3d at 453. In an ERISA case

like the one before us -- where our review is preceded by a district court's independent de novo review -- there is even more reason to accord some deference to the factual analysis conducted below.

Finally, clear error appellate review also aligns with the approach our sister circuits have adopted in similar ERISA cases. See Williams v. Int'l Paper Co., 227 F.3d 706, 714 (6th Cir. 2000) ("Factual findings inherent in deciding an ERISA claim are reviewed for clear error."); Bilheimer v. Fed. Exp. Corp. Long Term Disability Plan, 605 F. App'x 172, 181 (4th Cir. 2015) (per curiam) (unpublished) (reviewing the district court's finding that claimant was totally disabled for clear error); see also Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003) (construing the district court's disposition of defendant's "motion for judgment on the administrative record" as "essentially a bench trial 'on the papers'"); EEOC v. Maricopa Cty. Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir. 1984) (applying clear error review to a summary judgment decision issued on stipulated facts). We therefore adopt clear error review here. And, as we have explained, we cannot properly conduct such a deferential review in this case until we first have the benefit of the district court's views on the complete administrative record.

## III.

For the foregoing reasons, we <u>reverse</u> the district court's denial of Doe's motions to expand the scope of the administrative record; we <u>vacate</u> its order granting summary judgment for HPHC; and we <u>remand</u> for further proceedings consistent with this opinion.  Costs are awarded to plaintiff.