# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan DuBoise,                 :

            Appellant        :

                                    :

             v.                  :    No. 1743 C.D. 2019

                                    :    Submitted: June 19, 2020

Officer Hughan, Superintendent     :

Overmyer, and Grievance Coordinator    :

R. Reeher                          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge


**<u>OPINION NOT REPORTED</u>**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: February 4, 2021**


Ryan DuBoise, pro se, appeals from the December 4, 2019 Order of the Court of Common Pleas of the 37th Judicial District of Pennsylvania (Forest County Branch) (common pleas) that granted the Motion for Summary Judgment filed by Officer Hughan, Superintendent Overmyer, and Grievance Coordinator R. Reeher (collectively, Defendants), all of whom worked at the State Correctional Institution at Forest (SCI-Forest) where DuBoise was incarcerated. Relevant to this appeal, DuBoise filed an action under 42 U.S.C. § 1983[1] (Section 1983),

---

[1] Section 1983 of Title 42 of the United States Code states, in pertinent part:

> Every person who, under color of any statute, . . . of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or other person within the

**(Footnote continued on next page…)**

asserting that Defendants retaliated against him for engaging in his constitutionally protected right to file a grievance. In granting summary judgment on this claim, common pleas held that DuBoise had not alleged conduct that would constitute an adverse action and, therefore, could not establish a retaliation claim. On appeal, DuBoise argues common pleas erred in granting summary judgment because there was a genuine issue of material fact as to whether Hughan's alleged actions went beyond mere verbal harassment such that they could constitute an adverse action for purposes of Section 1983. (DuBoise's Brief (Br.) at 6, 8-9.) Viewing the record in the light most favorable to DuBoise, the non-moving party, we agree there is an outstanding genuine issue of material fact as to whether Hughan's alleged conduct could constitute an adverse action sufficient to establish a viable retaliation claim and, therefore, reverse the grant of summary judgment as to Hughan for the Section 1983 claim.[2]

---

**(continued…)**

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress[.]

42 U.S.C. § 1983. "Section 1983 does not create substantive rights but, rather is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008) (citation omitted). "To establish a *prima facie* case under [Section] 1983, a plaintiff must allege two elements: (1) the action occurred 'under color of state law'; and (2) the action is a deprivation of a constitutional right or a federal statutory right." *Jones v. City of Philadelphia*, 890 A.2d 1188, 1210 (Pa. Cmwlth. 2006) (citation omitted).

[2] In his reply brief filed with the Court, DuBoise concedes that the retaliation claims against Overmyer and Reeher are not cognizable. Therefore, common pleas' Order granting summary judgment to Overmyer and Reeher is affirmed.

## I.  BACKGROUND

DuBoise filed a Section 1983 Complaint in common pleas on February 1, 2018, against Defendants individually and in their official capacities, asserting that Defendants violated DuBoise's constitutional rights under the First Amendment to the United States Constitution.[3]  (Compl. ¶¶ 1, 8, Original Record (O.R.) Item 4.) He also asserted common law tort claims against Defendants based on their alleged negligence in denying him medication.  (*Id.* ¶ 1.)  DuBoise averred the following pertinent facts.  DuBoise was incarcerated in SCI-Forest.  On July 18, 2017, DuBoise finished dinner at around 5:30 p.m. and went to SCI-Forest's Medical Unit to take allergy medication.  (*Id.* ¶¶ 9, 11.)  When he arrived, Hughan denied DuBoise access to the Medical Unit based on an alleged unwritten policy of Overmyer that required medication to be taken before an inmate ate, not after.  (*Id.* ¶ 10.)  Despite DuBoise explaining his need for the allergy medication, Hughan continued to refuse access and "became very nasty," using foul language and referring to DuBoise's race in several comments.  (*Id.* ¶¶ 11-13.)  This resulted in DuBoise not being able to take his medication on that day.  (*Id.* ¶ 13.)  That same

---

[3] The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I.  An allegation of retaliation for filing a grievance or a lawsuit against Department of Corrections' staff invokes the First Amendment right of access to the courts. *Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1121 (Pa. 2009).  The First Amendment protections are applicable to the states through their incorporation with the Fourteenth Amendment's Due Process Clause, U.S. CONST. amend. XIV. *Meyer v. Grant*, 486 U.S. 414, 420 (1988); *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

day, DuBoise filed a grievance against Hughan. (*Id.* ¶ 14.) "SCI[-]Forest Administration . . . never responded to DuBoise's July 18, 2017 grievance." (*Id.* ¶ 17.)

DuBoise alleged that, on October 19, 2017, Hughan approached DuBoise at about 5:30 p.m. about the grievance DuBoise had filed, and, while clutching a can of pepper spray, told DuBoise that his

> f****** grievance [was] never going to get heard because the administration already told [Hughan] [that] they got [sic] it out for [DuBoise] and if [DuBoise] ever tr[ied] to file another grievance against [Hughan], [Hughan would] spray [DuBoise] to death and get other guards to join in whooping ass by saying [DuBoise] tried to assault [Hughan]. So [DuBoise] better watch [his] back because there's a price on [his] head n****!

(*Id.* ¶ 15.) DuBoise did not file a grievance regarding this "incident out of fear for his life." (*Id.* ¶ 16.)

Beginning in late July 2017, and continuing to the time of the Complaint, DuBoise sought mental health treatment because of Hughan's "racial comments and death threat against" DuBoise. (*Id.* ¶ 18.) There were eyewitnesses to both the July and October incidents, but DuBoise initially would not name them in order to protect their safety. DuBoise later submitted a declaration by a fellow inmate who corroborated much of DuBoise's account of the October 19, 2017 incident with Hughan, including that Hughan was clutching the pepper spray when Hughan threatened DuBoise. (DuBoise's Motion for Summary Judgment, Ex. C.1.)[4] Further, Hughan "ha[d] a custom and pattern [of] harassing and threatening prisoner[s,]" but the names of those prisoners were not included in the Complaint

---

[4] Common pleas denied DuBoise's Motion for Summary Judgment by order dated June 26, 2019. DuBoise has not challenged this order, and, therefore, we will not address it further.

4

for their safety. (Compl. ¶ 23.) Overmyer and Reeher "ha[d] a practice, policy, custom and procedures [of] turning a 'blind-eye' and retaliating against prisoners for bringing legal suits against SCI[-]Forest staff." (*Id.* ¶ 25.) Overmyer's unwritten policy regarding inmates having to eat before taking medication was unconstitutional, and Overmyer failed to properly train Hughan and Reeher resulting in the violation of DuBoise's constitutional rights. (*Id.* ¶¶ 26-27.)

Based on these averments, DuBoise asserted that Defendants retaliated against him for the filing of a grievance through Hughan's threat of physical assault, which was sufficient to deter a reasonable inmate of ordinary firmness and fortitude from filing any further grievances. (*Id.* ¶¶ 32-33.) He also asserted that Defendants were negligent in denying him access to his medication. (*Id.* ¶¶ 29-31; Am. Compl. ¶¶ 40-42,[5] O.R. Item 18.) DuBoise asked for, among other relief, a declaration that Defendants violated his constitutional rights, compensatory damages of $5,000 and punitive damages of $10,000 against each Defendant, a jury trial, and litigation costs. (Compl. ¶¶ 39-43.)

Defendants filed preliminary objections to the Complaint, which common pleas denied. Defendants filed an Answer and New Matter, denying the material allegations, and asserting, *inter alia*, that there was no retaliatory conduct, Defendants acted in good faith and did not seek to deprive DuBoise of any rights, privileges, or immunities protected by the United States Constitution, and DuBoise did not suffer any actual injury. (Answer and New Matter, O.R. Item 21.) Defendants also raised several affirmative defenses, including sovereign immunity and qualified immunity. DuBoise filed a response to the Answer and New Matter,

---

[5] DuBoise filed an Amended Complaint that incorporated all of the averments of the Complaint while adding additional averments regarding his negligence claims.

5

maintaining, among other things, that Defendants acted unreasonably and in bad faith, they were not entitled to sovereign or qualified immunity, and they acted individually or together to deprive DuBoise of his constitutional rights, privileges, or immunities. (O.R. Item 22.)

Following discovery,[6] Defendants filed the Motion for Summary Judgment arguing: the negligence claims were barred by sovereign immunity and did not fall within any of the exceptions to that immunity; and, even if accepted as true, the allegation against Hughan involved a verbal threat and was "not the type of conduct that gives rise to a Retaliation claim under [Section] 1983." (Motion for Summary Judgment ¶¶ 14-15, O.R. Item 58.) DuBoise generally denied Defendants' arguments in support of summary judgment. (DuBoise's Answer to Motion for Summary Judgment ¶¶ 10-16, O.R. Item 61.) DuBoise argued in his brief that Defendants were not entitled to summary judgment because the Motion for Summary Judgment "was filed in bad faith, would cause undue delay[,] and is ultimately futile[.]" (DuBoise's Br. in Support of Answer to Defendant's Motion for Summary Judgment at 1, O.R. Item 62.) Specifically, DuBoise asserted that Defendants' arguments related to the negligence claims were fatally flawed, the Motion for Summary Judgment was frivolous and intended to delay arbitration, and Defendants "failed to litigate in good faith." (*Id.* at 1-2.)

---

[6] During discovery, Defendants produced materials related to DuBoise's July 2017 grievance against Hughan, including the grievance and a response denying the grievance, the authenticity of which DuBoise challenged in a Motion in Limine. (Defendants' Responses to Plaintiff's First Request for Production of Documents, Ex. A to Defendants' Sur Reply to Plaintiff's Reply Brief in Support of Motion for Summary Judgment, O.R. Item 49; DuBoise's Motion in Limine, O.R. Item 35.) Common pleas denied the Motion in Limine, without prejudice, by order dated June 26, 2019. DuBoise has not challenged this order, and, therefore, we will not address it further.

After oral argument, common pleas granted Defendants' Motion for Summary Judgment. Common pleas held that DuBoise's common law tort claims were barred by sovereign immunity because Defendants were acting in the scope of their duties when the alleged negligence occurred and there were no exceptions to that immunity that were applicable. (Common pleas' Opinion (Op.) at 2-3.) As for DuBoise's retaliation claims, common pleas concluded DuBoise had not presented a viable constitutional claim. Common pleas explained that "verbal threats are not sufficient to be considered an adverse action in regards to a retaliation claim" because such threats could not "be viewed as . . . sufficient to deter a person of ordinary firmness from exercising [the person's] First Amendment rights." (*Id.* at 3 (citing *Cooper v. Sherman*, No. 1:17-cv-2064, 2019 WL 2408973, at *7 (M.D. Pa. June 7, 2019); *Bartelli v. Bleich*, No. Civ.A.3:CV04-0899, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005)) (internal quotation marks omitted).) DuBoise filed a notice of appeal, and a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), as directed by common pleas. Common pleas issued another order, stating that its prior opinion addressed the issues raised in the Statement.[7]

## II. PARTIES' ARGUMENTS

On appeal, DuBoise argues that the threat of physical assault by a corrections officer toward an inmate has been held by the United States Court of Appeals for the Third Circuit (Third Circuit) in *Rinaldi v. United States*, 904 F.3d

---

[7] "Our scope of review of [common pleas'] order granting summary judgment is limited to determining whether [common pleas] committed an error of law or abused its discretion." *Todora v. Buskirk*, 96 A.3d 414, 417 (Pa. Cmwlth. 2014) (citations omitted).

257, 267 (3d Cir. 2018), to be "serious enough to deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." (DuBoise's Br. at 6.) As such, he asserts, common pleas erred because this did not involve "'mere threatening language and gestures' which fails to rise to the level of a constitutional violation" but "the threat of physical assault with action, the action being the threatening use of a weapon (pepper spray)." (*Id.* at 8.) DuBoise argues that actions that intentionally place an inmate in fear of the inmate's life inflicts suffering that is consistent with an "unconstitutional punishment[] if the threat of physical harm is made to discourage a prisoner from seeking judicial relief, or in retaliation for so doing." (*Id.* at 8 (citing *Davidson v. O'Lone*, 752 F.2d 817, 821 (3d Cir. 1984)).) Because Hughan's remarks could be an adverse action, DuBoise maintains there was a genuine issue of material fact that would preclude the grant of summary judgment.

Defendants respond that common pleas properly granted summary judgment because, even when the evidence is viewed in DuBoise's favor, that evidence does not support an actionable retaliation claim. According to Defendants, the alleged verbal remarks of Hughan were not "an adverse or retaliatory **action** of the kind that can give rise to a First Amendment claim," as this Court has concluded "that an unfulfilled threat cannot constitute an 'adverse action' for constitutional purposes." (Defendants' Br. at 15 (citing *Williams v. Shawley* (Pa. Cmwlth., No. 1250 C.D. 2018, filed June 27, 2019); *Robinson v. Folino* (Pa. Cmwlth., No. 1770 C.D. 2017, filed June 8, 2018)).)[8] They contend that an adverse "action" must

---

[8] Unreported decisions of this Court, while not binding, may be cited for their persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

8

have "caused [DuBoise] . . . to 'suffer an injury'" that would "deter a person of ordinary firmness from continuing to exercise his or her constitutional rights." (*Id.* (quoting *Uniontown Newspapers, Inc. v. Roberts*, 839 A.2d 185, 198 (Pa. 2003)).) Because "[t]he unfulfilled verbal threat described by DuBoise was not sufficiently 'adverse' to implicate [DuBoise's] constitutional rights," Defendants argue that "the record conclusively demonstrated that DuBoise was never subjected to an 'adverse action' after he filed his grievance" and summary judgment was properly granted. (*Id.* at 16.)

Defendants further argue that the Third Circuit's decision in *Rinaldi* is not binding on this Court and is not persuasive because it did not address the "adverse action" requirement for a retaliation claim. Rather, the issue in *Rinaldi* was whether the inmate in that case had to exhaust the available administrative remedy, the prison grievance process, before filing an action under the federal Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), and whether that remedy was "available" if prison officials acted to prevent inmates from using that process through the use of threats of retaliation and bodily harm. *Rinaldi*, 904 F.3d at 267. According to Defendants, accepting DuBoise's allegations as true would allow him only to overcome this affirmative defense but would not establish an entitlement to relief for a constitutional violation under Section 1983. Finally, Defendants maintain that, as to Reeher and Overmyer, there are no allegations of their personal involvement in the alleged retaliatory conduct.

Defendants also provide arguments supporting alternative bases for affirming common pleas' Order, including that Defendants are entitled to qualified immunity for the claims against them in their personal capacities and any claims against them in their official capacities are not cognizable. (Defendants' Br. at 21-

24.) Such arguments were not raised in the Motion for Summary Judgment, but Defendants raised the defense of qualified immunity in their New Matter.

In his reply brief, DuBoise concedes that he has not asserted viable claims against Overmyer and Reeher, and, therefore, his appeal does not challenge the grant of summary judgment in those parties' favor. (DuBoise's Reply Br. at 3); *see also* supra n.3. As to Hughan, however, DuBoise reiterates that Hughan's comments were not unfulfilled general threats, but were threats of physical assault, which the Third Circuit in *Rinaldi* persuasively held are sufficient enough to deter a reasonable inmate from filing grievances. 904 F.3d at 267. Therefore, DuBoise argues, such threats should be considered sufficient to create a genuine issue of material fact as to whether such remarks constitute an adverse action under Section 1983.

## III. DISCUSSION

The standard for granting summary judgment is well settled.

> Summary judgment is properly granted where there is **no genuine issue of material fact** as to a necessary element of a cause of action and the moving party has established entitlement to judgment as a matter of law. "In order to withstand a motion for summary judgment, a non-moving party must produce sufficient evidence on an issue essential to h[is] case and on which []he bears the burden of proof such that a jury could return a verdict in h[is] favor." **We must view the record in the light most favorable to the opposing party, and all doubts** as to the existence of a genuine issue of material fact **must be resolved against the moving party**. Summary judgment is properly granted only in those cases which are free and clear from doubt.

*Todora v. Buskirk*, 96 A.3d 414, 417 (Pa. Cmwlth. 2014) (citations omitted) (emphasis added).

The Pennsylvania Supreme Court has held:

10

Retaliation claims are guided by the United States Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 [] (1987), which held "courts are ill equipped to deal with the increasingly urgent problems of prison administration . . . ," and great deference must be accorded to the administrative determinations of prison officials. *Id.* at 84-85 [] (citation omitted).

*Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1119-20 (Pa. 2009). To file a successful retaliation claim under the First Amendment, an inmate must demonstrate: "(1) [the inmate] engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal." *Richardson v. Wetzel*, 74 A.3d 353, 357 (Pa. Cmwlth. 2013). At issue in this appeal is the second prong: whether "the retaliation against th[e] conduct resulted in adverse action." *Id.* Our Court has explained:

> As a threshold matter, a state prison inmate must show he suffered some adverse action by prison officials in retaliation for engaging in constitutionally protected conduct. . . . "An inmate may satisfy the requirement of 'adverse action' by demonstrating that the action taken by officials was **sufficient to deter a person of ordinary firmness from exercising his constitutional rights**." [*Yount*, 966 A.2d at 1121]. *See also Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (government action may be considered retaliatory if motivated for exercising a constitutional right).

*Wilson v. Marrow*, 917 A.2d 357, 364 (Pa. Cmwlth. 2007) (emphasis added).

Verbal threats or verbal harassment do not constitute adverse action for purposes of establishing a First Amendment retaliation claim. *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009). However, verbal threats that are accompanied by a reinforcing act or action, such as threatening the use of a weapon, can be sufficient to assert a

11

constitutional claim. *Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (threat accompanied by a gun held to a prisoner's head); *Douglas v. Marino*, 684 F. Supp. 395, 397-98 (D.N.J. 1988) (threat accompanied by the wielding of a knife). The use of "threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation." *Gay v. Earl*, No. 11-1319, 2011 WL 5276537, at *3 (D.N.J. Nov. 2, 2011). In addition, a verbal threat or verbal harassment can rise to the level of a constitutional violation if "fulfillment of the threat [is] conditioned on [the plaintiff's] exercise of a constitutionally protected right." *Ricketts v. Derello*, 574 F. Supp. 645, 647 (E.D. Pa. 1983); *see also Bieros v. Nicola*, 860 F. Supp. 226, 233 (E.D. Pa. 1994) (same). Although these federal decisions are not binding, *Kutnyak v. Department of Corrections*, 923 A.2d 1248, 1250 (Pa. Cmwlth. 2007), we find their holdings persuasive.

In granting summary judgment on the retaliation claim, common pleas focused only on a part of Hughan's interaction with DuBoise, characterizing Hughan's conduct as constituting only a mere verbal threat. However, as DuBoise pled, the averred adverse action was Hughan's threat, made **while "his hand [was] clutching his pepper spray**," that "if you [DuBoise] **ever try to file another grievance against me** [Hughan], [he] will **spray [DuBoise] to death** and get the other guards to join in **whooping ass** by saying [DuBoise] tried to assault [Hughan]." (Compl. ¶ 15 (emphasis added).) In addition, DuBoise averred that Hughan stated that "[DuBoise] better watch [his] back because there [was] a price on [his] head" followed by calling DuBoise a "n\*\*\*\*!" *Id.* DuBoise further pled that, as a result of Hughan's threat, **he did not file a grievance** regarding this "incident out of fear for his life." (*Id.* ¶ 16.) A fellow inmate corroborated much

12

of these averments. (DuBoise's Motion for Summary Judgment, Ex. C.1.) Mindful that the record must be viewed in the light most favorable to DuBoise, the non-moving party, *Todora*, 96 A.3d at 417, a fact finder could find, if DuBoise's claims are credited, that Hughan's alleged threats to physically assault and kill DuBoise by "spraying [him] to death" while clutching the can of pepper spray, were not mere verbal threats, but threats accompanied with action—the clutching of pepper spray, a weapon. Further, Hughan's conduct, which included not only threatening to kill DuBoise, but also threatening to enlist the help of other corrections officers by falsely claiming that DuBoise had assaulted Hughan and that there was a "price on [DuBoise's] head" could be found to be outrageous. *Gay*, 2011 WL 5276537, at \*3. And, a prison employee's outrageous conduct, when coupled with the use of "threatening language [and] with the threatening use of a weapon . . . may indicate a constitutional deprivation." *Id.* Finally, the fulfillment of Hughan's threat was "conditioned on [DuBoise's] exercise of a constitutionally protected right," the filing of another grievance against Hughan. *Ricketts*, 574 F. Supp. at 647. While mere verbal threats or harassment do not constitute adverse action, the conduct alleged to have occurred here, if credited, could be found by a fact finder to be more than a mere verbal threat and, as such, could be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Yount*, 966 A.2d at 1167. Accordingly, there is a genuine issue of material fact that remains outstanding, which precludes the grant of summary judgment.

*Williams* and *Robinson* do not require a different result. *Williams* held that the inmate's allegations of adverse action, which were based merely on the temporal proximity between the protected conduct and the filing of a misconduct,

13

was insufficient to preclude the entry of summary judgment. Slip op. at 11. Unlike here, there were no allegations of threatening statements or conduct. In *Robinson*, we concluded the inmate there failed to sufficiently demonstrate the required adverse action even though the corrections officer made repeated threats that the officer would "get back" at the inmate for filing a grievance by sending the inmate to solitary confinement and the corrections officer's filing a misconduct against the inmate, which was ultimately dismissed. Slip op. at 6. We explained that there was no assertion that the inmate was actually sent to solitary confinement as threatened and that even false misconduct charges do not rise to the level of adverse action where the inmate is found not guilty of the misconduct. *Id.* at 6 & n.3. The complained of conduct in *Robinson* were mere verbal threats that were not, as here, accompanied by a reinforcing act or action or conditioned on the inmate's future exercise of a constitutionally protected right. Therefore, neither *Williams* nor *Robinson* are applicable to the retaliation claims averred here.

*Bartelli* and *Cooper*, relied upon by common pleas to grant summary judgment, are similarly inapplicable. The inmate in *Bartelli* alleged that he was subject to verbal threats and harassment in retaliation for the inmate's filing of a criminal complaint and grievance against a prison employee. 2005 WL 2347235, at *1, 3. *Cooper* involved, among other claims, an inmate's allegation that a prison employee threatened to mark a grievance filed by the inmate as frivolous in retaliation for submitting a grievance. 2019 WL 2408973, at *7. Thus, neither *Bartelli* nor *Cooper* support the grant of summary judgment in this matter as they involved verbal threats that were not, as alleged here, accompanied by a

reinforcing act or action or conditioned on the inmate's future exercise of a constitutionally protected right.[9]

## IV. CONCLUSION

Because DuBoise did not challenge common pleas' grant of summary judgment on the negligence claim and concedes that he has not stated a cognizable Section 1983 claim against Overmyer and Reeher, common pleas' Order is affirmed to the extent that it grants summary judgment on these claims. However, because there is a genuine issue of material fact regarding whether Hughan's alleged conduct could constitute an adverse action for purposes of establishing a retaliation claim, common pleas erred in granting summary judgment to Hughan on this claim. Therefore, common pleas' Order is reversed in this regard, and the matter is remanded for further proceedings on that claim.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[9] DuBoise cites *Rinaldi* and *Davidson* in support of his claims; however, given our disposition, we need not discuss whether those federal cases would apply in these circumstances.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan DuBoise,               :

               Appellant       :

                               :

           v.                  :     No. 1743 C.D. 2019

                               :

Officer Hughan, Superintendent    :

Overmyer, and Grievance Coordinator   :

R. Reeher                       :

## O R D E R

**NOW**, February 4, 2021, the Order of the Court of Common Pleas of the 37th Judicial District of Pennsylvania (Forest County Branch), entered in the above-captioned matter, is **AFFIRMED IN PART** and **REVERSED IN PART** in accordance with the foregoing opinion, and the matter is **REMANDED** for further proceedings on Ryan DuBoise's claims under 42 U.S.C. § 1983 against Officer Hughan.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge